# United States Court of Appeals for the Federal Circuit

2009-1066

PAM, S.P.A.,

Plaintiff-Appellant,

and

JCM, LTD.,

Plaintiff,

v.

UNITED STATES,

Defendant-Appellee,

and

A. ZEREGA'S AND SONS,

Defendant,

and

AMERICAN ITALIAN PASTA COMPANY,
NEW WORLD PASTA COMPANY,
and DAKOTA GROWERS PASTA COMPANY,

Defendants-Appellees.

David L. Simon, Law Office of David L. Simon, of Washington, DC, argued for plaintiff-appellant.

Jane C. Dempsey, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee United States. With her on the brief were Michael F. Hertz, Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director.

Mary T. Staley, Kelley Drye & Warren LLP, of Washington, DC, argued for defendants-appellees American Italian Pasta Company, et al. With her on the brief were David C. Smith, Jr. and Paul C. Rosenthal.

Appealed from: United States Court of International Trade

Judge Gregory W. Carman

# United States Court of Appeals for the Federal Circuit

2009-1066

PAM, S.P.A.,

Plaintiff-Appellant,

and

JCM, LTD.,

Plaintiff,

v.

UNITED STATES,

Defendant-Appellee,

and

A. ZEREGA'S AND SONS,

Defendant,

and

AMERICAN ITALIAN PASTA COMPANY,
NEW WORLD PASTA COMPANY,
and DAKOTA GROWERS PASTA COMPANY,

Defendants-Appellees.

Appeal from the United States Court of International Trade
in Case No. 04-00082, Judge Gregory W. Carman.
_____

DECIDED: September 24, 2009
_____

Before MICHEL, <u>Chief Judge</u>, LOURIE, <u>Circuit Judge</u>, and CLARK, <u>District Judge</u>.[*]

CLARK, <u>District Judge</u>.

Appellant PAM, S.p.A. ("PAM") appeals from a final judgment of the United States Court of International Trade ("CIT") concerning pasta imported into the United States by PAM. The CIT affirmed a remand determination issued by the Department of Commerce ("Commerce") in compliance with the CIT's earlier order directing Commerce to explain and recalculate an adverse-facts-available ("AFA") antidumping margin, which had been corroborated in accordance with 19 U.S.C. § 1677e(c). Because the 45.49% AFA margin assessed against PAM is supported by substantial evidence, we <u>affirm</u>.

## I.    BACKGROUND

PAM is an Italian producer and exporter of pasta. PAM's pasta is the subject of a 1996 Commerce antidumping order. <u>Notice of Antidumping Duty Order and Amended Final Determination of Sales at Less than Fair Value: Certain Pasta from Italy</u>, 61 Fed. Reg. 38,547-01 (Dep't of Commerce July 24,1996). PAM participated in the sixth administrative review of this antidumping order between July 1, 2001 and June 30, 2002, during which it filed questionnaire responses and participated in verification of its sales databases.

PAM failed to report its sales to one customer, AGEA, a governmental entity that buys pasta for distribution to charitable causes rather than for commercial resale. PAM also neglected to include a set of invoices with the prefix "FP," which denote invoices for

---

[*]    Honorable Ron Clark, District Judge, United States District Court for the Eastern District of Texas, sitting by designation.

2009-1066

goods shipped from an external warehouse to the customer. The AGEA and FP sales combined amounted to about two-thirds of PAM's total domestic sales.

Commerce found that PAM had not fully cooperated in the sixth administrative review, and applied an AFA margin. Notice of Preliminary Results: For the Sixth Administrative Review of the Antidumping Duty Order on Certain Pasta from Italy, 68 Fed. Reg. 47,020-02 (Dep't of Commerce Aug. 7, 2003). Commerce assessed an AFA margin of 45.49%, the highest margin applied to any party that had been previously upheld in the proceeding.[1]

PAM appealed to the CIT, arguing that the 45.49% AFA margin was unlawful for a number of reasons. The CIT found that Commerce had not adequately corroborated the AFA margin applied to PAM and remanded. In doing so, it stated that Commerce must select a margin that is a reasonably accurate estimate of PAM's actual rate, not merely one that is related to the overall level of dumping during the period of review. Because Commerce did not explain how the other respondents' transaction-specific margins were related to PAM's dumping activity during the period of review, the CIT concluded that the 45.49% margin appeared punitive and aberrational. The CIT remanded for Commerce "to explain and recalculate an adverse facts available rate that is corroborated in accordance with 19 U.S.C. § 1677e(c)."

On remand, Commerce used PAM's databases from the fourth administrative review — in which PAM was also a respondent — and found the 45.49% AFA margin it

---

[1] The rate was applied to Barilla, five years earlier in the first administrative review in 1995-97, and was affirmed on appeal by the CIT. World Finer Foods, Inc. v. United States, 120 F. Supp. 2d 1131, 1134 (Ct. Int'l Trade 2000). The same rate was also applied to Barilla in the fourth administrative review, in which Barilla declined to participate.

2009-1066

had assessed in the sixth administrative review was corroborated by United States sales in the fourth review with margins in excess of 45.49%. On appeal to the CIT, PAM argued that these sales were unrepresentative outliers (i.e., statistical anomalies). The CIT disagreed, and affirmed Commerce's findings.

PAM moved for reconsideration in the CIT, which was denied. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## II. DISCUSSION

### A. Standard of Review

When reviewing Commerce's determinations, this Court will "apply anew the same standard of review used by the Court of International Trade." Tung Mung Dev. Co. v. United States, 354 F.3d 1371, 1378 (Fed. Cir. 2004). We will uphold Commerce's determinations unless it is "'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'" Alloy Piping Prods., Inc. v. Kanzen Tetsu Sdn. Bhd., 334 F.3d 1284, 1289 (Fed. Cir. 2003) (quoting 19 U.S.C. § 1516a(b)(1)(B)(i)).

"Substantial evidence" is defined as "more than a mere scintilla," or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Micron Tech., Inc. v. United States, 117 F.3d 1386, 1393 (Fed. Cir. 1997) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206, 216 (1938)). The court will review the record as a whole — including any evidence that "fairly detracts from the substantiality of the evidence" — in determining whether substantial evidence exists. Micron Tech., 117 F.3d at 1393 (internal quotation omitted).

4

2009-1066

B.	Analysis

## 1.	Duty to provide complete and accurate information

PAM attempts to describe its failure to provide information as merely two "errors," one of which was supposedly a computer error, and the other allegedly due to mistaken advice from an attorney. However, PAM had refused to answer an initial questionnaire requesting the information and failed to include the sales data in responses to two supplemental questionnaires that clearly requested the information.

Parties and attorneys filing documents with the Department of Commerce have an obligation to provide complete and correct information. The duty is not unlike that of an attorney appearing before the Court of International Trade or any federal district court  See U.S. Ct. Int'l Trade R. 11(b); Fed. R. Civ. P. 11(b) (An attorney presenting to the court "a pleading, written motion, or other paper . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the  circumstances" that, among other things, "factual contentions have evidentiary support[.]") (emphasis added).

Congress has made very clear the importance of accurate and complete reporting of home market sales to the Department of Commerce. If an interested party "withholds information that has been requested by the administering authority" or provides information that cannot be verified, the administering authority "shall . . . use the facts otherwise available in reaching" its decision on an antidumping issue. 19 U.S.C. § 1677e(a)(2)(A), (D). If the interested party fails to cooperate by not acting, to the best of its ability, to comply with a request for information from Commerce, Section 1677e(b) permits Commerce to "use an inference that is adverse to the

5

interests of that party in selecting from among the facts otherwise available." Such adverse inferences may include reliance on information derived from previous administrative review or any other information placed on the record. Id. § 1677e(b)(3), (4).

## 2. Deferential review of adverse antidumping inference

Because of Commerce's special expertise in antidumping cases, the court applies the deferential "substantial evidence" standard when reviewing agency action in this field. F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000). PAM argues that the 45.49% AFA margin applied to it is not supported by substantial evidence, because the sales with margins over 45.49% from the fourth administrative review that Commerce relied upon are aberrant outlier values.

Commerce's discretion in applying an AFA margin is particularly great when a respondent is uncooperative by failing to provide or withholding information. See Id. § 1677e. While the possibility of a high AFA margin creates a powerful incentive to avoid dumping and to cooperate in investigations, there is a limit to Commerce's discretion. "Congress tempered deterrent value with the corroboration requirement. It could only have done so to prevent the petition rate (or other adverse inference rate), when unreasonable, from prevailing and to block any temptation by Commerce to overreach reality in seeking to maximize deterrence." De Cecco, 216 F.3d at 1032.

Congressional foresight in this regard was highlighted at oral argument when both attorneys for the Appellees maintained that the price of a single box of pasta out of

6

sales of thousands of cases would, in and of itself, corroborate an AFA margin based on that price. The burden imposed by substantial evidence review may not be heavy, but it is not ephemeral. There must be at least enough evidence to allow reasonable minds to differ. See Consol. Edison, 305 U.S. at 229, 59 S. Ct. at 217; Heisig v. United States, 719 F.2d 1153, 1156 (Fed. Cir. 1983). A single sale supported a 30.95% margin under the specific facts of Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330 (Fed. Cir. 2002). This does not mean that one sale by itself will always rise to the level of substantial evidence.

In the present case, Commerce's assessment of the 45.49% AFA margin is supported by substantial evidence. There were 29 sales with margins over 45.49%. PAM asserts that since these amounted to only 0.5% of PAM's total United States sales during the period of the fourth administrative review, they constitute outlier data that cannot be relied upon. This position was rejected by the Ta Chen court:

> Here, the 30.95% dumping margin is corroborated by actual sales data, and Ta Chen admits that it is reflective of some, albeit a small portion, of Ta Chen's actual sales. So long as the data is corroborated, Commerce acts within its discretion when choosing which sources and facts it will rely on to support an adverse inference.

Id., 298 F.3d at 1339.[2]

---

[2]    PAM also argues that the data from the fourth administrative review is not actually representative of its sales during that period, because costs and home market sales are not included, and the sales consist mostly of specialty pasta (which make up a small portion of total United States sales). However, PAM never previously challenged the data from the fourth administrative review. Commerce is permitted to use the information available to it in choosing and supporting an AFA value. See Ta Chen, 298 F.3d at 1338-39 ("In the case of uncooperative respondents, the discretion granted by the statute appears to be particularly great, allowing Commerce to select among an enumeration of secondary sources as a basis for its adverse factual inferences. In cases in which the respondent fails to provide Commerce with the most recent pricing

2009-1066

We reject PAM's suggestion that <u>Ta Chen</u> is called into question by <u>Exxon Shipping Co. v. Baker</u>, – U.S. –, 128 S. Ct. 2605 (2008).  In <u>Exxon Shipping</u>, the Court reviewed a punitive damages award under maritime common law rendered against Exxon in connection with the 1989 oil spill of the Exxon Valdez off the Alaskan coast.  The opinion noted the "stark unpredictability" of punitive damages awards when compared to compensatory awards, including the presence of "outlier" cases where the punitive damages dwarf the compensatory damages awarded.  <u>Id.</u> at 2625.  The Court ultimately settled on a rule where the appropriate upper limit ratio for punitive to compensatory damages in maritime cases was 1:1.  <u>Id.</u> at 2633.

According to PAM, <u>Exxon Shipping</u> — a case involving punitive damages in the area of maritime common law — should be read "expansively" for the proposition that unpredictable outlier results are generally to be avoided.  Nothing in <u>Exxon Shipping</u>, a case with a very different fact pattern and legal issues, requires us to impose new limits on the discretion Congress granted to the Department of Commerce.

### III.     CONCLUSION

The judgment of the Court of International Trade is affirmed.

<u>AFFIRMED</u>

---

data, it is within Commerce's discretion to presume that the highest prior margin reflects the current margins." (internal citation omitted)).

2009-1066