DYK, Circuit Judge,
concurring-in-part and dissenting-in-part.
I concur in large part with the majority opinion. My one area of disagreement relates to the holding that Commerce properly presumed that the rate established for King Pac Industrial Co., Ltd. (“King Pac”) in the first administrative review was still valid for the period of the second administrative review such that it could be applied against KYD, Inc. (“KYD”), an unrelated importer. See Majority Op. 766-67.
Here, King Pac (formerly Zippae), the exporter, participated but did not cooperate during the first administrative review and was assigned an extraordinarily high dumping margin of 122.88% based on adverse facts available. See 19 U.S.C. § 1677e(b). King Pac did not participate in the second administrative review, again refusing to cooperate. Commerce none *769 theless presumed that the 122.88% dumping margin assigned to King Pac was still valid for the period of the second administrative review and used this dumping margin to calculate an assessment rate for importer KYD. The question is whether the presumption can be applied without corroborating data for the period of the second administrative review.
While the statute and regulations allow the use of adverse facts available against a non-cooperating party, see id.; 19 C.F.R. § 351.308, the presumption on .which the majority relies does not appear in the statute or regulations, but is a product of agency decision making. See Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1339 (Fed.Cir.2002) .(“In cases in which the respondent fails to provide Commerce with the most recent pricing data, it is within Commerce’s discretion to presume that the highest prior margin reflects the current margins.”). We have sustained the use of this presumption as being within the agency’s discretion on the theory that “it reflects a common sense inference that the highest prior margin is the most probative evidence of current margins because, if it were not so, the importer, knowing of the rule, would have produced current information showing the margin to be less.” Rhone Poulenc, Inc. v. United States, 899 F.2d 1185, 1190 (Fed.Cir.1990) (emphasis in original). But those are cases in which the exporter was a party to the proceeding. That is not the case here. They are also not cases in which an importer challenged the use of the presumption to establish a dumping margin.
KYD has a clear right to challenge the antidumping margin for the exporter, King Pac. See 19 U.S.C. § 1677(9) (defining United States importers of subject merchandise as “interested part[ies]”); see also id. § 1516a (providing that “an interested party who is a party to the proceeding in connection with which the matter arises may commence an action in the United States Court of International Trade ... contesting any factual findings or legal conclusions upon which the determination is based”). Under the circumstances of this case, I think that applying the presumption against KYD is arbitrary and capricious.
First, KYD did not participate in the first administrative review, in which the 122.88% dumping margin for King Pac was established, and there has been no showing that KYD was then an “interested party” and could have participated in that review. KYD also did not refuse to cooperate with the investigation in the second administrative review; it was King Pac that failed to cooperate.
Second, there has been no showing that KYD did have, or could have had, access to records that would have enabled Commerce to compute a more accurate dumping margin for King Pac. As noted above, KYD is not related to King Pac. 'The majority faults KYD for its failure to produce such information, stating that “KYD offered no evidence regarding King Pac’s activities during the period of review for the second administrative review that would rebut [the] presumption [that the rate established for King Pac was still valid].” Majority Op. 767. But this seems unfair if KYD did not have access to this information. The entire theory of the presumption is that the party injured had access to more recent data, and would have produced that data if it would have resulted in a more favorable dumping margin.
Third, the dumping margin assigned to King Pac is more than sixty-five times higher than the next highest dumping margin imposed in the second administrative review. This court has expressed con *770 cerns in the past over disproportionately high dumping margins calculated on the basis of adverse facts available. See F.lli De Ceceo Di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed.Cir.2000) (noting that the purpose of adverse facts available is “to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins”); see also Gallant Ocean (Thailand) Co. v. United States, 602 F.3d 1319, 1324 (Fed.Cir.2010) (holding that an adverse facts available rate that was more than ten times higher than the average dumping margin for cooperative respondents was punitive, aberrational, or uncorroborated, and excessive in view of the cooperative respondents’ dumping rates).
The high dumping margin here is not corroborated by any current data. There is no reason to believe that this margin continues to be accurate for the period of the second administrative review. There was no determination by Commerce that the market conditions prevailing during the second administrative review were the same as those prevailing during the period of the first administrative review. And it is noteworthy in this connection that the dumping margins for other exporters declined substantially from 1.41-16.43% to 0. 80-1.87% from the first to the second administrative review. See Polyethylene Retail Carrier Bags from Thailand, 72 Fed.Reg.1982, 1983 (Dep’t of Commerce Jan. 17, 2007) (final results of first administrative review); Polyethylene Retail Carrier Bags from Thailand, 72 Fed.Reg. 64,-580, 64,581 (Dep’t of Commerce Nov. 16, 2007) (final results of second administrative review). The government has argued that the dumping margins decreased as the result of the incentives of the first administrative review antidumping order, and it has also admitted that this same “incentive” to reduce the dumping margin applied to King Pac.
In this situation, Commerce should be barred from using the presumption for the period of the second administrative review without corroborating data for the period in question. ■ In the second administrative review, Commerce was of course permitted to use adverse facts available because King Pac refused to cooperate. See 19 U.S.C. § 1677e(b). But, our cases make clear that the dumping margin must be corroborated by “secondary information that has some grounding in commercial reality.” See Gallant Ocean, 602 F.3d at 1324.[1] In the light of this governing principle, I think that Commerce, in making a determination, must corroborate using current facts, that is, not simply data from the first administrative review. Commerce’s failure to do so in the second administrative review, in my view, renders its determination arbitrary and capricious, at least, where, as here, the complaining party had no access to the necessary data.

. See Gallant Ocean, 602 F.3d at 1323 (overturning an adverse facts available margin based on an adjusted petition rate where "Commerce incorrectly presumed that the adjusted petition rate was reliable in the face of much more reliable information”); see also F.lli De Ceceo, 216 F.3d at 1032 (“[Congress] intended for an adverse facts available rate to be a reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to noncompliance. Congress could not have intended for Commerce’s discretion to include the ability to select unreasonably high rates with no relationship to the respondent’s actual dumping margin.”).