Slip Op. 10-88

UNITED STATES COURT OF INTERNATIONAL TRADE

```
                                   :
SHANDONG MACHINERY                 :
IMPORT & EXPORT COMPANY            :
                                   :
              Plaintiff,           :
                                   : Before: Richard K. Eaton, Judge
         v.                        :
                                   : Court No. 07-00355
UNITED STATES,                     :
                                   :
              Defendant,           :
                                   :
     and                           :
                                   :
AMES TRUE TEMPER and               :
COUNCIL TOOL COMPANY, INC.,        :
                                   :
              Def.-Ints.           :
                                   :
```

OPINION AND ORDER

[Department of Commerce's remand results remanded]

Dated: August 11, 2010

*Hume & Associates LLC* (*Robert T. Hume*) for plaintiff.

*Tony West*, Assistant Attorney General; *Jeanne E. Davidson*, Director; *Patricia M. McCarthy*, Assistant Director, Civil Division, Commercial Litigation Branch, United States Department of Justice (*Michael D. Panzera*); Office of Chief Counsel for Import Administration, United States Department of Commerce (*Shana Hofstetter*), of counsel, for defendant.

*Wiley Rein LLP* (*Timothy C. Brightbill* and *Maureen E. Thorson*), for defendant-intervenor Ames True Temper.

*Kelley Drye & Warren* (*Eric McClafferty* and *John M. Herrman II*), for defendant-intervenor Council Tool Company, Inc.

Eaton, Judge:  This matter is before the court after remand to the Department of Commerce ("Commerce" or the "Department"). *See* Final Results of Redeterm. Pursuant to Court Remand (Dep't of Commerce Jan. 7, 2010)("Remand Results").  The Remand Results address the antidumping duty rate applied to hammers/sledges exported by plaintiff Shandong Machinery Import & Export Company ("SMC") in the fifteenth administrative review of antidumping duty orders covering heavy forged hand tools ("HFHTs") from the People's Republic of China ("PRC") for the period of review beginning on February 1, 2005, and ending on January 30, 2006 ("POR").  *See* HFHTs, Finished or Unfinished, With or Without Handles, From the PRC, 72 Fed. Reg. 51,787 (Dep't of Commerce Sept. 11, 2007) (final results) and the accompanying Issues and Decision Memorandum (Dep't of Commerce Sept. 4, 2007) ("Issues & Dec. Mem.") (collectively, "Final  Results").[1]

In the Final Results, Commerce found that plaintiff failed to rebut the non-market economy ("NME") presumption of government control.[2]  As a result, Commerce applied a country-wide

---

[1]     United States imports of HFHTs are subject to individual antidumping duty orders covering separate categories of goods, including hammers/sledges.  Final Results, 72 Fed. Reg. at 51,787.

[2]     A non-market economy includes "any foreign country that the administering authority [Commerce] determines does not operate on market principles of cost or pricing structures, so that sales of merchandise in such country do not reflect the fair value of the merchandise."  19 U.S.C. § 1677(18)(A) (2006); *Shandong Huarong Gen. Group Corp. v. United States*, 28 CIT 1624,

antidumping duty rate ("PRC-wide rate") to SMC's exports.  *See*

Issues & Dec. Mem. at Comment 1; HFHTs, Finished or Unfinished,

With or Without Handles, From the PRC, 72 Fed. Reg. 10,492 (Dep't

of Commerce Mar. 8, 2007) ("Prelim. Results").  Commerce

assigned, as the PRC-wide rate, using adverse facts available,

45.42 percent for hammers/sledges.  Final Results, 72 Fed. Reg.

at 51,787.  In selecting a PRC-wide rate for hammers/sledges,

Commerce used the 45.42 percent rate calculated as the best

information available ("BIA")[3] rate during a 1991 less than fair

value ("LTFV") investigation of the China National Machinery

Import & Export Corporation.  *See* Issues & Dec. Mem. at Comment

_____

1625 n.1, Slip Op. 04-117 (2004) (not reported in the Federal
Supplement).

    "Any determination that a foreign country is a nonmarket
economy country shall remain in effect until revoked by the
administering authority."  19 U.S.C. § 1677(18)(C)(i) (2006).
The PRC has been determined to be an NME country.  The Department
has treated the PRC as a non-market economy country in all past
antidumping investigations.  *Zhejiang Native Produce & Animal By-
Products Imp. and Exp. Corp. v. United States*, 27 CIT 1827, 1834
n.14, Slip Op. 03-151 (2003) (not reported in the Federal
Supplement) (citations omitted).

    [3]    BIA is the predecessor to the use of adverse facts
available.  In the Statement of Administrative Action of the
Uruguay Round Agreements Act of 1994, Pub.L. No. 103-465, 108
Stat. 4809 (1994), Congress explained that the Uruguay Round
amended the prior law, which "mandate[d] use of the best
information available (commonly referred to as BIA) if a person
refuse[d] or [was] unable to produce information in a timely
manner or in the form required." H.R. Doc. No. 103-316 (1994) at
868, reprinted in 1994 U.S.C.C.A.N. 4040, 4198.  *Shandong Huarong
Mach. Co. v. United States,* 30 CIT 1269, 1282 n.9, 435 F. Supp.
2d 1261, 1274 n.9 (2006).

3; HFHTs, Finished or Unfinished, With or Without Handles, From

the PRC, 56 Fed. Reg. 241 (Dep't of Commerce Jan. 3, 1991) (final

results).

     Plaintiff SMC challenged the Final Results in this Court.

*See Shandong Machinery Imp. & Exp. Co. v. United States*, 33 CIT

__, Court No. 07-355, Slip Op. 09-64 (June 24, 2009) (not

reported in the Federal Supplement)("*Shandong I*").  In *Shandong

I*, the court sustained the Department's findings that a) SMC was

not entitled to a separate rate because it failed to demonstrate

that it was not owned or controlled by the PRC; and b) adverse

facts available ("AFA")[4] should be applied to the PRC-wide entity,

including SMC.[5]  However, the court remanded the rate assigned to

hammers/sledges after finding that Commerce failed to corroborate

the 45.42 percent rate because it was based on information that

was not verified.  *Shandong I*, 33 CIT at __, Slip Op. 09-64 at

19-20;  *see* HFHTs, Finished or Unfinished, With or Without

Handles, From the PRC, 56 Fed. Reg. at 241.  The court found:

> Rather than using verified information, the
> Department used information submitted by the
> petitioner.  Specifically, Commerce
> calculated an average of the margins
> contained in the petition for each class or

---

[4]     When periodically reviewing and reassessing antidumping
duties for an uncooperative party, Commerce "may use an inference
that is adverse to the interests of that party in selecting from
among the facts otherwise available."  19 U.S.C. § 1677e(b).

[5]     The *Shandong I* court also sustained the margins
assigned to the other hand tools at issue.

> kind of merchandise, as adjusted for
> calculation errors in the petition.
> Therefore, Commerce took no steps to
> corroborate the information during the LTFV
> investigation.

*Shandong I*, 33 CIT at \_\_, Slip Op. 09-64 at 20 (citation

omitted).  Accordingly, the court found that the 45.42 percent

rate was not reliable.  *Id*. at \_\_\_, Slip Op. 09-64 at 20

("Consequently, the 45.42 percent rate is not reliable, and the

court directs Commerce, on remand, to assign a different rate to

hammers/sledges that has been corroborated according to its

reliability and relevance to the country-wide entity as a

whole.") (internal quotation omitted).

On January 7, 2010, Commerce issued its Remand Results.  In

the Remand Results, Commerce applied a new PRC-wide rate of

109.16 percent based on a single transaction margin from SMC's

2004-2005 administrative review, i.e., the fourteenth

administrative review.  *See* Remand Results at 11; Def.'s Resp.

Comments Remand Determ. ("Def.'s Resp.") 3; *see also* Remand

Results at 8 ("The Department next examined the transaction-

specific rates of SMC from the most recent prior reviews, as SMC

is part of the PRC-wide entity.").  Plaintiff now challenges the

Remand Results.  *See* Pl.'s Comments Final Results Redeterm.

Pursuant to Court Remand ("Pl.'s Comm.").  Defendant-intervenors

Ames True Temper and the Council Tool Company, Inc. support the

Remand Results.  *See* Ames True Temper's Comments Supp. Final Results Redeterm. Pursuant to Court Remand ("Ames' Comm."); Def.-Int. Council Tool Co.'s Comments Final Results Redeterm. Pursuant to Court Remand ("Council Tool's Comm.").

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2)(B)(iii) (2006).  For the following reasons, the court remands the rate for hammers/sledges to Commerce for further findings consistent with this opinion.

## STANDARD OF REVIEW

When reviewing Commerce's final antidumping determinations, the court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ." 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

I.   Legal Framework

In seeking a PRC-wide rate based on AFA, the Department may use information derived from the petition, a final determination in the investigation, any prior administrative review, or any other information placed on the record.  *See* 19 U.S.C. § 1677e(b); Statement of Admin. Action accompanying the Uruguay Round Agreements Act, H.R. Rep. 103-316 at 870, reprinted in 1994

U.S.C.C.A.N. 4040, 4199 (stating that secondary information is "information derived from the petition that gave rise to the investigation or review, the final determination concerning the subject merchandise, or any previous review under [19 U.S.C. § 1675] concerning the subject merchandise").

Where, as here, Commerce relies on secondary information such as calculated rates from previous reviews, rather than information obtained in the course of a current investigation or review, the Department must "to the extent practicable, corroborate that information from independent sources that are reasonably at [its] disposal."  19 U.S.C. § 1677e(c); *see* 19 C.F.R. § 351.308(d).  To corroborate secondary information, Commerce must "examine whether the secondary information to be used has probative value."  *See* 19 C.F.R. § 351.308(d).  Probative value means that the rate must be both a) reliable and b) relevant.  *See Ferro Union, Inc. v. United States*, 23 CIT 178, 202, 44 F. Supp. 2d 1310, 1333 (1999) ("*Ferro Union*").

II.  Remand Results

On remand, Commerce first examined the weighted average rates calculated for hammers/sledges in preceding segments of this proceeding and found that the highest calculated rate was 34.56 percent.  Def.'s Resp. 8 (citing Remand Results at 8).  Commerce determined that this rate, which was a partial AFA rate

for SMC, would be inappropriate as an AFA margin for the PRC-wide entity because assigning the 34.56 AFA rate "to the PRC-entity would also lead to the PRC-wide entity exporters, including SMC, obtaining a more favorable result by failing to cooperate than if they had cooperated fully." Remand Results at 7-8. Commerce thus turned to an examination of the transaction-specific antidumping margins of SMC's sales calculated from the fourteenth administrative review. Def.'s Resp. 8 (citing Remand Results at 8).

These transaction-specific margins ranged from zero to 348 percent. Def.'s Resp. 8 (citation omitted). Commerce first stated that these transaction-specific margins could be used to corroborate the 45.42 AFA rate applied in the Final Results,[6] but that, because the court had instructed it to select a "different" rate, Commerce selected 109.16 percent, SMC's "single transaction-specific margin calculated in the prior review that is closest to and exceeds the original 45.42 percent AFA rate." Remand Results at 9-10.

Commerce states that in choosing the 109.16 percent rate it

---

[6]     Specifically, Commerce states: "Since more than 98 percent of the positive individual transaction margins from the *2004-2005 Final Results* are higher than 45.42 percent, using individual transaction margins from the *2004-2005 Final Results* provides a sufficient basis to find the 45.42 percent rate has probative value and, thus, is corroborated within the meaning of the statute." Remand Results at 9 (citation omitted).

has: (1) demonstrated that it was a calculated rate reflecting SMC's commercial activities from the prior year's administrative review; (2) explained that the rate is based on verified information from the same company; (3) determined that "the rate has not been found either unsupported by substantial evidence nor contrary to law by any court"; and (4) noted the data have not been challenged by any record evidence.  Def.'s Resp. 9 (citing Remand Results at 10-11).  While Commerce's efforts seemed designed to corroborate the rate as to SMC itself, the Department nonetheless found that the 109.16 percent rate was an appropriate AFA PRC-wide rate.

In response, plaintiff argues, *inter alia*, that the margin is not supported by substantial evidence or otherwise in accordance with law, and that the rate is punitive.  *See* Pl.'s Comm. 9-14.

III. The Hammers/Sledges Rate Selected on Remand is Aberrational and Punitive

The court finds that the selected rate is aberrational and punitive.[7]  The Federal Circuit teaches that an AFA rate must be "a reasonably accurate estimate of the respondent's actual rate,

---

[7]     Because the court finds the rate to be aberrational and punitive, and thus must be remanded, it need not address plaintiff's other arguments as to the inadequacies of the selected rate.

albeit with some built-in increase intended as a deterrent to
non-compliance."  *F.LLI De Cecco Di Fillippo Fara S. Martino
S.p.A. v. United States*,  216 F.3d 1027, 1032 (Fed. Cir. 2000)
("*De Cecco*").  That the Department's new rate of 109.16 percent
goes beyond the Federal Circuit's guidance can be seen from the
Department's previous findings in this case.  Specifically,
Commerce determined in the Final Results that the 45.42 percent
rate it chose was sufficient to ensure future compliance:

> The Department's practice when selecting an
> adverse rate from among the possible sources
> of information is to ensure that the margin
> is sufficiently adverse so "as to effectuate
> the purpose of the facts available role to
> induce respondents to provide the Department
> with complete and accurate information in a
> timely manner."

*See* Issues & Dec. Mem. at Comment 3 (citation omitted).  If a
rate of 45.42 percent has been found by Commerce to fulfill the
goal of ensuring compliance, then a rate of over twice as much
must necessarily be punitive.  "[T]he purpose of [the statute
governing adverse inferences] is to provide respondents with an
incentive to cooperate, not to impose punitive, aberrational, or
uncorroborated margins." *De Cecco*, 216 F.3d at 1032; *see Timken
Co. v. United States*, 26 CIT 1072, 1076, 240 F. Supp. 2d 1228,
1234 (2002), *aff'd*, 354 F.3d 1334 (Fed. Cir. 2004)(in choosing a
margin, Commerce must "appropriately balanc[e] th[e] goal of
accuracy against the risk of creating a punitive margin");

*Gallant Ocean (Thailand) Co., Ltd. v. United States*, 602 F. 3d

1319, 1324 (Fed. Cir. 2010).


CONCLUSION

The court therefore remands this matter to Commerce to

determine a non-punitive PRC-wide rate for hammers/sledges.  In

its Remand Results, Commerce states that it is able to

corroborate the 45.42 percent rate:

> the Department believes that had the Court
> permitted the Department another opportunity
> to corroborate the 45.42 percent [rate] we
> would have concluded that these individual
> transaction margins from the administrative
> review of SMC, covering the period February
> 1, 2004, through January 31, 2005,
> corroborate the 45.42 percent rate applied to
> the country-wide entity as a whole.

Remand Results at 8-9 (citation omitted).  If Commerce is capable

of corroborating the 45.42 percent rate, then it may endeavor to

do so on remand.  The Department shall be mindful, however, that

whatever rate it finds must be in accord with its previous

finding that the rate of 45.42 percent is sufficient to ensure

compliance.  Should the Department wish, it may reopen the record

and calculate an AFA rate to be applied to the PRC-wide entity

for sales of hammers/sledges, with an additional amount to deter

future non-compliance.

The remand results shall be due on December 10, 2010;

comments to the remand results shall be due on January 31, 2011;

and replies to such comments shall be due on February 22, 2011.


                                        /s/ Richard K.Eaton
                                        Richard K. Eaton

Dated:      August 11, 2010
            New York, New York