*1380 REYNA, Circuit Judge,
dissenting.
The majority’s conclusion that the Department of Commerce (“Commerce”) acted arbitrarily when it assigned appellant Jiangsu Jianghai Chemical Group, Ltd. a company-specific Adverse Facts Available (“AFA”) rate is based on three fundamental errors.
First, the majority goes to great length to address an AFA issue that was neither appealed nor otherwise properly before this court. Appellant had conceded that specific issue in the underlying proceedings before Commerce and the Court of International Trade.
Second, the majority manifests a fundamental misunderstanding of the AFA statute and how AFA applies in the context of antidumping duty investigations. The majority writes to cure what it perceives to be an injustice created by Commerce applying AFA to a voluntary, cooperating respondent. But the AFA statute operates both to encourage cooperation in antidumping investigations, and to prevent absurd or unjust results when parties, cooperating or not, have submitted incomplete or unusable data, such as awarding a de minimis or zero dumping rate to an undeserving respondent.
Third, the majority applies the wrong standard of review. The majority applies an arbitrary and capricious standard to Commerce’s fact finding determinations. Our case law and that of the Court of International Trade makes clear that a substantial evidence standard of review applies with respect to factually based determinations. Consistent with the statute, this court gives deference to the expertise of the administrating authority, particularly with respect to the application of AFA and its choice of methodology.
In sum, the majority has created its own issue, which it hoists with non-existing terminology,[1] it seeks to correct a wrong and sets the foundation for absurd results in the future, and it conducts its analysis under the wrong standard of review. I dissent.
I. The Issue on Appeal
The majority asserts that only two issues were on appeal and that the second issue was framed as follows:
“[WJhether Commerce acted arbitrarily in recalculating the appellant’s separate rate, when Commerce constructed a hypothetical AFA rate based on U.S. price data obtained from a non-cooperating respondent, averaged that hypothetical AFA rate with the de minimis rate for Wujin Water, and then assigned the resulting separate rate to the appellant.”
Majority op. at 15. This statement of the AFA issue on appeal is symptomatic of the majority opinion: It represents the point of mistaken embarkation from which the opinion sails into areas well beyond the scope of this appeal. It introduces a new term to antidumping law, “hypothetical AFA rate,” with the apparent purpose of injecting anomaly into what is essentially a typical AFA case.
The appellant, in fact, raises four issues on this appeal. In its brief at the Statement of Issues section, appellant details only four issues: two issues pertain to whether Commerce exceeded the scope of the remand order, and a third issue pertains to Commerce’s decision to recalculate U.S. price on remand. The fourth issue appellant raises is the only issue that pertains to the AFA rate assigned to appellant. A simple review of this issue reveals that it is markedly different from the issue *1381 the majority framed. Compare the following issue with the issue as restated by the majority.
4. Whether the U.S. Court of International Trade committed error when it ratified the Department’s arbitrary selection of certain data to form the basis for a recalculated U.S. price in the remand determination.
Appellant’s Br. at 3 (emphasis added).
A comparison of the majority’s and the appellant’s issues reveals that the majority devotes its attention to whether Commerce acted arbitrarily in the methodology used to arrive at, or calculate, the AFA rate. Appellant, however, does not challenge the methodology, but rather the data selected by Commerce to recalculate the new U.S. price. In fact, appellant conceded before Commerce and the Court of International Trade that it did not challenge the AFA methodology.
The substantive difference between data used in antidumping calculations and the methodology Commerce- adopts to perform antidumping calculations is profound.
The majority opinion demonstrates a failure to distinguish between data and methodology in the context of antidumping duty investigations and instead addresses methodology when the appeal is about the data.
Indeed, litigants in dumping cases understand well the distinction between data and methodology as the two areas are often the points of greatest contention. This case is a good example of how litigants will base a strategy on data and not methodology, or vice versa. As the appellant notes in its brief, it stood to receive a zero dumping margin had Commerce made the adjustments it sought to normal value (and which it sought on remand) while retaining the same methodology used in the investigation to arrive at the appellant’s separate rate. What appellant failed to forecast was that Commerce on remand would recalculate U.S. price and use U.S. sales data taken from BWA’s questionnaire responses. As a result, on remand its margins were only cut in half, as opposed to driven to zero. This is why on this appeal the appellant challenges (1) Commerce’s authority to recalculate a new U.S. price (that it exceeded the scope of the remand order), and (2) that Commerce acted arbitrarily in its use of the BWA data (because it should have used data from the petition or its own data). If it wins on either issue, it stands to obtain a zero margin.[2]
II. The Standard of Review
In addition to addressing the wrong issue as a result of failing to distinguish between data and methodology, the majority goes on to apply the wrong standard of review. As noted below, the correct standard of review for Commerce’s factual de *1382 terminations is substantial evidence.[3] See 19 U.S.C. § 1516a(b)(l)(B)(i). Here, the majority denies the administrating authority the deference owed to it under law and case precedent and instead disturbs well supported findings of fact with its own view on how the case should have resulted.[4]
III. The Purpose of AFA
The errors advanced by majority opinion portend grave consequences in the application of the U.S. antidumping statutes. In particular, the majority opinion creates a new AFA standard for cooperating respondents whose data is incomplete or inaccurate. This is because the majority sees only one side of the AFA deterrence coin, that AFA rates are intended to compel participation in dumping cases. It fails to see the flip side of the coin; AFA rates also ensure that a cooperating respondent whose data for whatever reason is insufficient is not undeservedly awarded a de minimis or zero dumping rate. See Nippon Steel Corp. v. United States, 337 F.3d 1373, 1381 (Fed.Cir.2003) (“Commerce may impose an adverse inference after determining that a respondent has not been fully cooperative or has failed to act to the best of its ability in gathering information.” (emphasis added)). At bottom, the majority addresses an issue not in controversy to inject its view of fairness into dumping proceedings by replacing the judgment of the administrating agency with its own.
IV. The AFA Data and Methodology
I agree with Commerce that recalculating U.S. price was within the scope of the voluntary remand order. Nothing in the remand order limited Commerce only to recalculating the normal value when “examining ... whether [it] corroborated the adverse facts available rate upon which it relied in calculating the separate rate.” See Changzhou Wujin Fine Chem. Factory Co. v. United States, No. 09-00216, 2010 Ct. Intl. Trade LEXIS 108, at *1-2 (Ct. Int’l Trade Feb. 8, 2010). After requesting a remand in the terms adopted verbatim by the Court of International Trade, Commerce further requested that “if the Court grants [Commerce’s] request for a partial remand, the Court allow Commerce ... to examine the issues related to the adverse *1383 facts available rate, to make any necessary recalculations based on its examination, and to obtain comments from the parties.” Joint App’x at 1480, 1501. Appellant apparently did not challenge this request.
Once Commerce determined that it could not corroborate the AFA rate, it had to calculate a new AFA rate for purposes of calculating appellant’s separate rate. Because AFA rates are based on the difference between the normal value and U.S. price, Commerce’s establishment of the AFA rate necessarily involved considering the continued viability of both normal value and U.S. price. See 19 U.S.C. § 1673e(a)(l). Commerce could no longer rely on uncorroborated secondary information for normal value and U.S. price. See 19 U.S.C. § 1677e(e). Thus, Commerce’s decision to establish a new U.S. price susceptible to corroboration was reasonable, well within its authority, and not contrary to law. Id. That no party challenged the U.S. price prior to the remand is immaterial. Commerce acted within the remand’s scope when it recalculated U.S. price to arrive at a new AFA rate and a new separate rate for appellant.
Nor did Commerce err in its recalculation of appellant’s separate rate. Generally, the separate rate is the weighted average of dumping margins established for entities individually investigated, excluding zero and de minimis margins, and margins determined entirely on the basis of AFA. 19 U.S.C. § 1673d(c)(5)(A). As in this case, where dumping margins for all entities individually investigated are zero or de minimis or determined entirely on the basis of AFA, Commerce may use any reasonable method for establishing the separate rate for entities not individually investigated, including averaging the dumping margins of entities individually investigated. § 1673d(c)(5)(B).
Throughout the investigation and on remand, Commerce has consistently applied a methodology for calculating separate AFA rates whereby it averaged the dumping margins assigned to the entities that were individually investigated. Appellant has not challenged Commerce’s decision to use this methodology before the Court of International Trade, nor has it done so on this appeal. U.S. Appellee Br. at 33; Compass Appellee Br. at 9 n. 2. The records shows that appellant has specifically endorsed this methodology, Joint App’x at 1571; 1582-83, and directs its challenge solely to Commerce’s decision to use BWA’s U.S. price in the AFA calculation.[5] Stated differently, appellant challenges the data used, not the methodology employed.
Appellant offers a host of reasons why it believes that Commerce’s decision to use the U.S. price of BWA a single uncooperative respondent, in its AFA rate calculation was contrary to law. It argues that BWA’s U.S. price is an “extreme outlier” and does not reflect a “commercial reality.” [6] Appellant relies on Gallant Ocean (Thail.) Co. v. United States, 602 F.3d 1319 (Fed.Cir.2010), where this court held that an AFA rate more than five times higher than the highest rate applied to a cooperating respondent was not supported by substantial evidence. 602 F.3d at 1324. *1384 Because nothing in the record in that case tied the AFA rate — derived from an adjusted petition rate — to Gallant, we concluded that the AFA rate was unrelated to commercial reality and not a reasonable accurate estimate of Gallant’s actual dumping, hence, not supported by substantial evidence. Id. Notably, we observed that “[t]he fact that Commerce ultimately imposed dumping margins between 5.91% and 6.82% for the same products after its initial investigation shows the possession of better information and shows that the adjusted petition rate was aberrational.” Id. at 1323-24. We counseled Commerce that it should have relied on representative dumping rates of similarly-sized and similarly-situated exporters, which could have provided a reasonable basis from which to calculate an appropriate AFA rate. Id. at 1324.
Appellant’s reliance on Gallant Ocean is misplaced. First, although the AFA rate determined by Commerce in this case is arguably a multiple of the highest calculated rate, Appellant Br. at 37, the AFA rate was not applied to appellant directly, but rather was used to calculate a separate rate. It would be uni’easonable to require such a rate to reflect a commercial reality of appellant. Compare Gallant Ocean, 602 F.3d at 1323-24 (reversing a 57.64% AFA rate applied to Gallant because it had no grounding in Gallant’s commercial reality), with PAM, S.p.A. v. United States, 582 F.3d 1336, 1336, 1340 (Fed.Cir.2009) (affirming a 45.49% AFA rate applied to PAM although only 0.5% of its U.S. sales were at that margin), and Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1339 (Fed.Cir.2002) (affirming a 30.95% AFA rate applied to Ta Chen although only 0.04% of its sales during the period of review were at that margin).
Second, this court in Gallant Ocean held that “Commerce failed to corroborate the adjusted petition rate with ‘independent sources that are reasonably at [its] disposal.’ ” 602 F.3d at 1324 (alteration in original) (citing 19 U.S.C. § 1677e(c)). By contrast, Commerce in this case abandoned the petition rate on remand when it determined that it could no longer corroborate it. Since Commerce relied on “information obtained in the course of an investigation” on remand, it was not obligated to corroborate either BWA or Wujin Water’s data. See § 1677e(c). We have previously recognized that as long as the data is corroborated, or as here, does not require corroboration, “Commerce acts within its discretion when choosing which sources and facts it will rely on to support an adverse inference.” PAM, 582 F.3d at 1340 (quoting Ta Chen, 298 F.3d at 1339); see also F.lli De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed.Cir.2000) (“Commerce’s special expertise makes it the ‘master’ of the anti-dumping law, entitling its decisions to great deference from the courts.”).
Finally, whereas Commerce “possessed] ... better information” and “had abundant resources from which to calculate a reasonable AFA rate” in Gallant Ocean, 602 F.3d at 1323-24, any other combination of U.S. price data in this case, other than BWA’s alone, would have resulted in a zero or de minimis dumping margin. Commerce wields the AFA rate to deter noncompliance with its investigations. De Cecco, 216 F.3d at 1032. This objective would be undermined if we compelled it to use de minimis AFA rates. As Commerce observed,
[a]n AFA rate of zero [or de minimis ] would not be sufficiently adverse as to effectuate the purpose of the facts available rule to induce respondents to provide the Department with complete and accurate information in a timely manner and would not ensure that uncooperative *1385 parties do not obtain a more favorable result by failing to cooperate than if they had had cooperated fully.
Changzhou Wujin Fine Chemical Factory Co. v. United States, No. 09-00216, ECF No. 44, at 16 (Apr. 30, 2010) (Final Results of Redetermination Pursuant to Court Order).
The circumstances of this case are distinct in that Commerce redetermined the AFA rate on remand solely for the purposes of determining appellant’s separate rate; the other non-cooperative respondents did not challenge, and thus were assigned, the AFA petition rate of 72.42%. Yet it remained within Commerce’s discretion to choose which sources and facts to rely on to support an adverse inference. See De Cecco, 216 F.3d at 1032. Appellant’s failure to challenge as unreasonable Commerce’s separate rate calculation methodology exposed it to the consequences flowing from Commerce’s discretion to select an AFA rate sufficiently adverse to effectuate the purposes of the statute. While Commerce’s discretion was not boundless, id., assigning an AFA rate of zero or de minimis would be contrary to the statutory objectives of the AFA rate. Indeed, if Commerce had used any of the alternative data sources appellant advances in this appeal, a de minimis AFA rate would result.
I therefore would hold that Commerce’s reliance on BWA’s data for U.S. price, and that the methodology it selected to calculate the separate rate for appellant was supported by substantial evidence and otherwise not contrary to law.

. The majority gives great attention to the term "hypothetical AFA rate.” But there is no such term in antidumping law, and its meaning remains unclear.

. Curiously, because of the majority opinion, the appellant may have won the battle, but lost the war. The majority offers no clear guidance as to how Commerce is to proceed. It appears to instruct Commerce that it can no longer apply any AFA methodology when calculating a separate rate for a cooperating respondent whose submitted data was deficient. If the majority opinion instructs that on remand U.S. price must be recalculated using U.S. sales data or data from sources other than BWA, it is worth noting that both the petitioner's and the appellant’s data have previously been ruled as inappropriate due to, among other things, non-corroboration and incompleteness. I believe that since we conduct our reviews de novo and on the basis of the entire record, it behooved the majority to inform Commerce how to proceed on remand. In any event, appellant now stands to achieve a higher margin than it obtained in either the investigation or the remand.

. The majority's "contention that the imposition of adverse facts available was an ‘abuse of discretion' is a misstatement of the proper standard of review.... [This court reviews such decisions] under the substantial evidence standard ... as opposed to the 'arbitrary, capricious, abuse of discretion’ standard.” Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1335 (Fed.Cir.2002); see also Nippon Steel Corp. v. United States, 337 F.3d 1373, 1379 (Fed.Cir.2003) ("We will uphold Commerce’s determination unless it is ‘unsupported by substantial evidence on the record, or otherwise not in accordance with law.’ ”). Substantial evidence review is particularly appropriate in cases like this one where Commerce must fashion its own rules of procedure and pursue methods of inquiry capable of permitting it to discharge its multitudinous duties. PSC VSMPO-Avisma Corp. v. United States, 688 F.3d 751, 760 (Fed.Cir.2012)

. The majority justifies its departure from the substantial evidence standard of review on the grounds that it "must” also determine whether the agency’s factual finding is arbitrary and capricious. This is incorrect with respect to Commerce’s antidumping determinations. We have repeatedly upheld determinations that are supported by substantial evidence where anything more than a "mere scintillia” exists to support Commerce’s determination and, in doing so, have resisted the urge to insert our judgment for that of Commerce. See, e.g., PAM, S.p.A. v. United States, 582 F.3d 1336 (Fed.Cir.2009); Ningbo Dafa Chem. Fiber Co. v. United States, 580 F.3d 1247 (Fed.Cir.2009); Huvis Corp. v. United States, 570 F.3d 1347 (Fed.Cir.2009); Ta Chen, 298 F.3d 1330.

. BWA was an uncooperative respondent, but it had submitted a Q & V questionnaire response early in the investigation. Based on its response, Commerce was able to determine the average unit value (value divided by quantity), which approximated the U.S. price of its merchandise during the period of investigation.

. The majority asserts that BWA’s data was not the best data on record. It does not, however, respond to the appellant’s arguments that BWA’s data should not have been used because it was "outlier” data. Whether BWA’s data was adequate is a question of fact that we review for substantial evidence.