# United States Court of Appeals for the Federal Circuit

05-1296

NSK LTD., NSK CORPORATION, and NSK BEARINGS EUROPE, LTD.,

Plaintiffs,

and

NTN CORPORATION, NTN BEARING CORPORATION OF AMERICA,
AMERICAN NTN BEARING MANUFACTURING CORPORATION,
NTN-DRIVESHAFT, INC., and NTN-BCA CORPORATION,

Plaintiffs-Appellants,

and

ASAHI SEIKO CO., LTD.,

Plaintiff,

and

ISUZU MOTORS LTD. and MPB CORPORATION,

Plaintiffs,

v.

UNITED STATES,

Defendant-Appellee,

and

TIMKEN U. S. CORPORATION,

Defendant-Appellee.

Diane A. MacDonald, Baker & McKenzie LLP, of Chicago, Illinois, argued for plaintiffs-appellants. On the brief were Donald J. Unger and Louisa Vassileva Carney. Of counsel was Nikolay A. Ouzounov, Barnes, Richardson & Colburn, of Chicago, Illinois.

Claudia Burke, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee United States. With her on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Patricia M. McCarthy, Assistant Director; and David Silverbrand,

Trial Attorney. Of counsel on the brief was <u>Jennifer I. Johnson</u>, Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC.

<u>Geert M. De Prest</u>, Stewart and Stewart, of Washington, DC, argued for defendant-appellee, Timken U.S. Corporation. With him on the brief were <u>Terence P. Stewart</u> and <u>William A. Fennell</u>. Of counsel was <u>Lane S. Hurewitz</u>.

Appealed from: United States Court of International Trade

Judge Evan J. Wallach

# United States Court of Appeals for the Federal Circuit

05-1296

NSK LTD., NSK CORPORATION, and NSK BEARINGS EUROPE, LTD.,

Plaintiffs,

and

NTN CORPORATION, NTN BEARING CORPORATION OF AMERICA,
AMERICAN NTN BEARING MANUFACTURING CORPORATION,
NTN-DRIVESHAFT, INC., and NTN-BCA CORPORATION,

Plaintiffs-Appellants,

and

ASAHI SEIKO CO., LTD.,

Plaintiff,

and

ISUZU MOTORS LTD. and MPB CORPORATION,

Plaintiffs,

v.

UNITED STATES,

Defendant-Appellee,

and

TIMKEN U.S. CORPORATION,

Defendant-Appellee.

DECIDED:  March 7, 2007

Before BRYSON, GAJARSA, and LINN, Circuit Judges.

BRYSON, Circuit Judge.

This appeal from a decision by the United States Court of International Trade concerns the twelfth administrative review of an antidumping duty order covering antifriction bearings from Japan.  NSK Ltd. v. United States, 346 F. Supp. 2d 1312 (Ct. Int'l Trade 2004).  The four appellants, which we refer to collectively as NTN, appeal from the portion of the trial court's judgment sustaining the Department of Commerce's use of "facts otherwise available" and "adverse inferences" when determining NTN's antidumping duty margin.

I

On June 19, 2001, Commerce published a notice of initiation of the twelfth administrative review of an antidumping duty order covering certain antifriction bearings imported from Japan.  Notice of Initiation of Antidumping and Countervailing Duty Administrative Reviews and Requests for Revocations in Part, 66 Fed. Reg. 32,934 (June 19, 2001).  NTN was included in that review.

During the review proceeding, Commerce issued an antidumping duty questionnaire and a supplemental questionnaire to NTN.  Among other things, the questionnaires inquired into NTN's method of calculating and reporting freight expenses for bearings sold in its home market and in the United States.  Commerce requires respondents to report freight expenses incurred on products covered by the antidumping duty order because it must adjust normal values and U.S. prices for freight

costs before comparing them. 19 U.S.C. §§ 1677a(c)(2)(A), 1677b(a)(6)(B)(ii). Commerce prefers to receive freight expense data in terms of the cost per transaction but has acknowledged that it is not always possible for companies to report freight costs in that form. See 19 C.F.R. § 351.401(g). Accordingly, Commerce permits respondents to calculate certain expenses by allocating the total expense incurred to individual product sales, as long as the allocation method is done on "as specific a basis as is feasible" and is shown not to cause inaccuracies or distortions. Id. For example, allocated reporting may be required when multiple items are included in a single shipment but only some of the items are subject to the antidumping duty order. In that case, the total freight cost can be apportioned among the shipped products on the basis of factors such as the weight of the products.

Commerce's questionnaires specifically requested information about freight expenses. Commerce stated that if NTN found it necessary to allocate its freight expenses, it should allocate them according to the basis on which the expenses were incurred, such as weight or volume. If NTN incurred freight expenses on multiple bases (e.g., weight and distance), it was directed to allocate them according to at least one of the bases on which they were incurred. If, however, NTN was unable to allocate its freight expenses according to the bases on which they were incurred, Commerce required NTN to (1) explain how it allocated the expenses, (2) explain why it could not allocate them on the bases on which they were incurred, and (3) demonstrate that the allocation method that NTN selected in its response was not distortive. Commerce directed that in selecting the allocation method NTN should use the least distortive

allocation methodology available. Additionally, Commerce requested that NTN report the weight of each product that was subject to the antidumping duty order.

NTN responded to the inquiry by noting that its freight expenses were incurred on multiple bases and that there was no one basis common to all those expenses. NTN asserted that the only variable on which it had data for all its products was sales value. It therefore allocated its freight expenses according to that variable. It offered the following statement to demonstrate that the "sales value" method of allocation was not distortive: "This allocation methodology is not distortive because it represents the most consistent method of estimating what the freight expenses would have been." When Commerce inquired further into the freight expense issue in its supplemental questionnaire, NTN asserted that allocation according to sales value "is not distortive because it bases freight expense on the factor common to each shipment, sales value. Because [sales value] is common to all shipments, the freight expense cannot be shifted in favor of one shipment or another." NTN further argued that sales value is as non-distortive as weight because larger bearings are more expensive than smaller ones.

In response to the question about the weight of its products, NTN responded that it "does not use weight in its calculation of freight expenses," and it therefore asserted that Commerce had no need to elicit information about the weight of each product. When asked a second time about the weights of its products, NTN again stated that it could not allocate freight expenses on the basis of weight and then asserted that it did not track and thus did not have available the weights of some of its products. It did not include either a complete or a partial list of the requested data.

Commerce rejected NTN's allocation methodology and determined the freight expenses by "drawing adverse inferences" from "facts otherwise available," pursuant to 19 U.S.C. § 1677e. The Court of International Trade affirmed that determination. NSK, 346 F. Supp. 2d at 1342-43. The court reasoned that Commerce permissibly rejected NTN's proffered allocation method because NTN had failed to demonstrate that it had allocated freight expenses on as specific a basis as was feasible, had failed to demonstrate that its allocation method was non-distortive, and had failed to provide the requested weight data from which Commerce might have been able to estimate freight expenses. Because NTN did not have usable freight expense data in the record, the court held that it was appropriate, pursuant to 19 U.S.C. § 1677e(a), for Commerce to use "facts otherwise available" to calculate the freight expenses. Furthermore, the court held that because NTN had failed, despite two requests, to provide usable freight expense data or a sufficient explanation as to why its method was not inaccurate or distortive, Commerce was justified in concluding that NTN had not acted to the "best of its ability" to comply with Commerce's review. Accordingly, the court held that it was appropriate, pursuant to 19 U.S.C. § 1677e(b), for Commerce to apply "adverse inferences" to the facts otherwise available when determining freight expenses. 346 F. Supp. 2d at 1342. Because Commerce's determinations are supported by substantial evidence and are not erroneous as a matter of law, we affirm.

II

We review antidumping determinations made by Commerce according to the same standard of review that is used by the Court of International Trade. We will uphold Commerce's determinations unless they are unsupported by "substantial

evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i); F.Lii de Cecco di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1031 (Fed. Cir. 2000).

A

NTN argues that Commerce was wrong to reject NTN's proffered freight expense data. According to NTN, Commerce had the information it needed and was not justified in using facts otherwise available to determine NTN's freight expenses. As noted, to justify allocating expenses on a basis not used in incurring them, a respondent must demonstrate that the proposed method does not cause inaccuracies or distortions and that it has allocated its expenses on as specific a basis as is feasible. 19 C.F.R. § 351.401(g). Here, NTN failed both requirements.

First, NTN failed to demonstrate that allocation by sales value is not distortive or inaccurate. Instead of setting forth a full explanation of why sales value is non-distortive, NTN relied on a brief conclusory assertion to that effect. NTN's explanation consisted of little more than a combination of the obvious observation that sales value is a feature of every product and the unsupported assertion that sales value is "the most consistent method of estimating what the freight expenses would have been." That explanation says nothing about the relationship between sales value and freight expense and thus provides no reason to conclude that allocation by value is accurate and non-distortive. The statement that allocation by value prevents freight costs from being shifted in favor of one shipment or another similarly does not disclose anything about the relationship between sales value and shipping costs, and it thus also fails to demonstrate that the "sales value" method is accurate and non-distortive. Even

assuming that NTN's statement is true, the most it proves is that NTN cannot intentionally manipulate the result of the allocation method. It does not show that the result is accurate and non-distortive absent such manipulation.

Second, NTN argues that allocation by sales value is as specific as is feasible and that allocation by weight—Commerce's preferred allocation method—is at least as distortive as allocation by sales value because larger bearings are more costly than smaller bearings. NTN failed, however, to provide record evidence in support of that assertion. Accordingly, in addition to failing to demonstrate that value-based allocation is accurate and non-distortive, NTN failed to show that its allocation method was the most specific feasible method. Commerce was therefore justified in rejecting NTN's submission as insufficient. See 19 C.F.R. § 351.401(g). Because NTN also did not provide the requested weight data, the Court of International Trade properly sustained Commerce's decision that it did not have the information necessary to conduct its review and so was justified in using facts otherwise available.[1] See 19 U.S.C.

_____

[1]    NTN makes the related argument that before using facts otherwise available to calculate its freight expenses, Commerce was required to comply with 19 U.S.C. § 1677m(d), which provides that if Commerce determines that a response to a request for information is insufficient, it must notify the submitter and provide an opportunity to remedy or explain the deficiency. Commerce, however, satisfied its obligations under section 1677m(d) when it issued a supplemental questionnaire specifically pointing out and requesting clarification of NTN's deficient responses.
     NTN further argues that even if its remedial response was unsatisfactory, section 1677m(e) required Commerce to use the freight expense data NTN provided. Section 1677m(e) provides that Commerce must use a submitter's information as long as the submitter demonstrates that it acted to the best of its ability in complying with the request for information, and as long as the information is timely, capable of verification, sufficient to serve as a reliable basis for the determination, and usable without undue difficulties. NTN's argument under section 1677m(e) stands or falls with NTN's last argument, that Commerce was wrong to use an adverse inference under section 1677e(b) when choosing among the facts otherwise available. Both arguments require

§ 1677e(a) (facts otherwise available can be used when, for example, "necessary information is not available on the record").

B

NTN next argues that even if Commerce was justified in using facts otherwise available to determine freight expenses, it was not justified in drawing adverse inferences when doing so. Under 19 U.S.C. § 1677e(b), when making a determination from facts otherwise available, Commerce may sometimes select which facts to use by applying an inference adverse to the respondent. This can be done if the respondent has "failed to cooperate by not acting to the best of its ability to comply with a request for information." 19 U.S.C. § 1677e(b). Acting to the best of one's ability under that statute "requires the respondent to do the maximum it is able to do." Nippon Steel Corp. v. United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003). Whether a respondent has lived up to that requirement is assessed by determining "whether [the] respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." Id. While that standard does not require perfection, it "does not condone inattentiveness, carelessness, or inadequate record keeping." Id.

In finding that an adverse inference was justified in this case, Commerce noted that NTN failed to explain adequately how its allocation method is non-distortive. That finding is supported by substantial evidence. It was reasonable for Commerce to conclude that NTN's summary statements, unrelated to the relationship between its

---

NTN to have cooperated with Commerce to the "best of its ability." 19 U.S.C. §§ 1677e(b), 1677m(e)(4). Because we hold that NTN failed to satisfy the "best ability" requirement of section 1677e(b), it also failed to satisfy the "best ability" requirement of section 1677m(e).

freight expenses and the basis on which those expenses were allocated, did not reflect a legitimate attempt to provide Commerce with a "full and complete" demonstration of the accuracy or non-distortive effect of the allocation methodology. NTN argues that "Commerce neglected to explain or analyze whether NTN willfully decided not to comply with its request, or alternatively, whether NTN's conduct fell below the standard for a reasonable respondent." However, we have specifically rejected the argument that Commerce is required to make such findings, stating that "section 1677e(b) does not by its terms set a 'willfulness' or 'reasonable respondent' standard, nor does it require findings of motivation or intent." Nippon Steel, 337 F.3d at 1383. NTN also argues that Commerce did not clearly articulate a reason for its application of an adverse inference. Commerce, however, separately addressed why it found that NTN had not acted to the best of its ability. It stated, among other things, that NTN failed to change its allocation method or expand on why allocation by sales value was not distortive, even after a second request from Commerce. We agree with the trial court that Commerce's explanation was sufficient under the applicable statutory standard and that Commerce permissibly applied an adverse inference to the facts otherwise available when calculating NTN's freight expenses.

AFFIRMED.