**Slip Op. 11-17**

## UNITED STATES COURT OF INTERNATIONAL TRADE

_____

|  |  |  |
|---|---|---|
| | : | |
| TIANJIN MAGNESIUM | : | |
| INTERNATIONAL CO., LTD., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Before: Jane A. Restani, Judge |
| | : | |
| UNITED STATES, | : | Court No. 09-00535 |
| | : | |
| Defendant, | : | **Public Version** |
| | : | |
| and | : | |
| | : | |
| US MAGNESIUM LLC, | : | |
| | : | |
| Intervenor Defendant. | : | |
| | : | |

_____

## OPINION AND ORDER

[Commerce's <u>Final Results</u> in antidumping matter is remanded for Commerce to make a finding as to whether plaintiff cooperated to the best of its ability in antidumping review. Plaintiff's motion for judgment on the agency record is denied as to its due process claims.]

Dated: February 11, 2011

<u>Riggle and Craven</u> (<u>David A. Riggle</u> and <u>Lei Wang</u>) for the plaintiff.

<u>Tony West</u>, Assistant Attorney General; <u>Jeanne E. Davidson</u>, Director, <u>Patricia M. McCarthy</u>, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (<u>David S. Silverbrand</u>); <u>Thomas M. Beline</u>, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, of counsel, for the defendant.

<u>King & Spalding LLP</u> (<u>Stephen A. Jones</u>, <u>Jeffery B. Denning</u>, and <u>Steven R. Kenner</u>) for the intervenor defendant.

Restani, Judge: This court action challenges the Department of Commerce's

("Commerce") final results rendered in an antidumping duty ("AD") review of pure magnesium

from the People's Republic of China ("PRC"). See Pure Magnesium from the People's Republic

of China: Final Results of Antidumping Duty Administrative Review, 74 Fed. Reg. 66,089

(Dep't Commerce Dec. 14, 2009) ("Final Results"). The plaintiff, Tianjin Magnesium

International Co., Ltd. ("TMI") submitted a motion for judgment on the agency record pursuant

to USCIT R. 56. For the reasons stated below, the court remands this matter to Commerce with

instructions to either find that TMI did not fulfill its statutory duties and assign it an AFA rate, or

calculate a neutral facts available rate for TMI.

## BACKGROUND

In July 2008, Commerce initiated an administrative review of the antidumping

duty order on pure magnesium from the PRC for the period May 1, 2007, through April 30, 2008

("2007 2008 review") and named TMI as a respondent. Initiation of Antidumping and

Countervailing Duty Administrative Reviews and Requests for Revocation in Part, 73 Fed. Reg.

37,409, 37,409 (Dep't Commerce July 1, 2008). In June 2008, Commerce published its

preliminary results and assigned TMI a preliminary weighted-average AD margin of 9.1%.[1] Pure

Magnesium from the People's Republic of China: Preliminary Results of 2007-2008

Antidumping Duty Administrative Review, 74 Fed. Reg. 27,090, 27,096 (Dep't Commerce June

8, 2009) ("Preliminary Results"). In NME cases, Commerce uses a factors of production

---

[1] An AD margin is the difference between the normal value ("NV") of merchandise and the price for sale in the United States. See 19 U.S.C. § 1673e(a)(1); 19 U.S.C. § 1677(35). Unless nonmarket economy ("NME") methodology is used, an NV is either the price of the merchandise when sold for consumption in the exporting country or the price of the merchandise when sold for consumption in a similar country. 19 U.S.C. § 1677b(a)(1). An export price or constructed export price is the price that the merchandise is sold for in the United States. 19 U.S.C. § 1677a(a) (b).

("FOP")[2] methodology for determining NV.  See 19 U.S.C. § 1677b(c)(1).  For its FOP inputs,

TMI advocated certain valuations of raw materials and by-products produced by its unaffiliated

supplier.[3]  See US Magnesium's App. Tab 5, D-13.  Commerce preliminarily accepted this

information for the purposes of calculating TMI's NV, but stated that it intended to verify all

information it relied upon.  Preliminary Results, 74 Fed. Reg. at 27,094, 27,096.

   During verification, Commerce visited TMI's producer in an effort to verify its

FOP methodology.  See Issues and Decision Memorandum for the Final Results of the 2007-

2008 Administrative Review of Pure Magnesium from the People's Republic of China, A-570-

832, POR: 5/1/2007  4/30/2008, at 6 (Dep't Commerce Dec. 7, 2009) ("Issues and Decision

Memorandum"), avaliable at http://ia.ita.doc.gov/frn/summary/PRC/E9-29727-1.pdf (last visited

Feb. 10, 2011).  The producer, however, conducted itself in a manner that frustrated Commerce's

efforts.  Id.  In addition, Commerce encountered evidence strongly suggesting that the producer

had doctored records.  Id.  Based on this behavior, Commerce concluded in its Final Results that

---

  [2] FOP includes "hours of labor required," "quantities of raw materials employed," "amounts of energy and other utilities consumed," and "representative capital cost, including depreciation."  19 U.S.C. § 1677b(c)(3).

  [3] During the period of review, [[    ]] of the pure magnesium sold by TMI to the United States was supplied to it by two producers, [[

   ]].  See App. of Documents Cited in US Magnesium's Resp. in Opp. to Pl.'s Rule 56.2 Mot. for J. on the Agency R. ("US Magnesium's App.") Tab 16, at 5  6, Tab 24, at 2. Although these two producers are denominated as separate companies, they share common financial, accounting, and sales departments, all located at [[            ]] headquarters.  Id. at Tab 24, 2.  There is also evidence on the record suggesting that TMI is [[              ]] exporting agent for pure magnesium.  Id. at Tab 6, Ex. 5.

<em>Confidential Data Deleted</em>

TMI's information was unreliable and assigned it an adverse facts available ("AFA") rate of 111.73%, id. at 10; Final Results, 74 Fed. Reg. at 66,090, which was the highest weighted-average margin calculated for a cooperating respondent in the previous review, Issues and Decision Memorandum at 12  13.

In December 2009, TMI commenced this action contesting the AFA rate of 111.73%.  In June 2010, the TMI filed a motion for judgment on the agency record pursuant to USCIT Rule 56.2.

## STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c).  The court will uphold Commerce's final results in AD reviews unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

**I.      AFA**

During an AD review, when "an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority . . . the administering authority . . . may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available."  19 U.S.C. § 1677e(b).  The AD duty rate under such circumstances is known as an AFA rate and may be based on information obtained from: "(1) the petition, (2) a final determination in the investigation under this subtitle, (3) any previous review under [19 U.S.C. § 1675] or determination under [19 U.S.C. § 1675b], or (4) any other information placed on the record."  Id.  For this reason, the United

States Court of Appeals for the Federal Circuit has repeatedly acknowledged that "Commerce's discretion in applying an AFA margin is particularly great." PAM S.p.A. v. United States, 582 F.3d 1336, 1340 (Fed. Cir. 2009).

TMI claims that Commerce erred by applying an adverse inference against it in the Final Results. Mot. for J. on the Agency R. Submitted by Pl. Tianjin Magnesium International Co., Ltd. Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade ("Pl.'s Br.") 2. TMI argues that Commerce's application of AFA was not in accordance with the law because Commerce based its decision solely on an unaffiliated producer's failure to cooperate. Id. at 3. This claim has merit.

"Before making an adverse inference, Commerce must examine respondent's actions and assess the extent of respondent's abilities, efforts, and cooperation in responding to Commerce's requests for information." Nippon Steel Corp. v. United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003). Commerce, however, lacks "authority under 19 U.S.C. § 1677e(b) to use an inference that is adverse to a party to the proceeding absent a factual finding that such party failed to cooperate by not acting to the best of its ability to comply with a request for information."[4] SKF USA Inc. v. United States, 675 F. Supp. 2d. 1264, 1275 (CIT 2009) (internal

---

[4] The Government claims that SKF is inconsistent with the statute. Def.'s Resp. to Pl.'s Mot. for J. Upon the Administrative R. ("Def.'s Br.") 15. Pursuant to 19 U.S.C. § 1677(9), the term "interested party" includes both exporters and producers. See 19 U.S.C. § 1677(9). Commerce argues its interpretation of "interested party" under 19 U.S.C. § 1677e(b) to include "both the exporter and its unaffiliated suppliers of subject merchandise," regardless of whether they are a respondent to the review, is reasonable. Issues and Decision Memorandum at 10; see Def.'s Br. 17. In support of this position, the Government cites KYD, Inc. v. United States, 607 F.3d 760, 768 (Fed. Cir. 2010), for the proposition that uncooperative unaffiliated parties can effect the dumping margins of others. Def.'s Br. 17 18. Importers, like KYD, however, take the

(continued...)

quotation marks omitted).

In the Final Results, Commerce stated that TMI's margin is based on total AFA

because its "producers have failed to cooperate to the best of their ability."[5]  Final Results, 74

Fed. Reg. at 66,090; Issues and Decision Memorandum at 6.  Commerce's decision to apply

AFA to TMI, therefore, was in violation of 19 U.S.C. § 1677e(b) because it did not make a

"fail[ure] to cooperate" finding as to the actual respondent, TMI.[6]  See SKF, 675 F. Supp. 2d. at

---

[4](...continued)
margins of their exporters/producers.  The data of the exporters and producers are the basis for the AD margin calculation.  Whether any exporter is responsible for the conduct of its supplier is a separate matter.  See SKF, 675 F. Supp. 2d. at 1276.  Further, the definition of "interested party" in 19 U.S.C. § 1677(9) is irrelevant.  Essentially that defines which parties may participate before the agency and thus file action here pursuant to 28 U.S.C. § 2631(c).  Thus, "interested parties," participating or not, may indeed get AFA rates, but that does not convert one interested party into another interested party under 19 USC § 1677e(b).  See SKF, 675 F. Supp. 2d. at 1277.

[5] The Final Results incorporate by reference an additional memorandum written by Commerce further explaining its application of AFA to TMI.  See Final Results, 74 Fed. Reg. at 66,090 n.8; Application of Adverse Facts Available for Tianjin Magnesium International, Ltd. in the 2007-2008 Administrative Review of Pure Magnesium from the People's Republic of China (Dep't Commerce Dec. 7, 2009) ("AFA Memorandum"), available at US Magnesium's App. Tab 30.  Although this document further explains the events that occurred during verification, all findings of failure to cooperate apply solely to TMI's producer.  See AFA Memorandum at 12  13.

[6] US Magnesium claims that Commerce's application of AFA is supported by substantial evidence because there are facts on the record which indicate that TMI did not cooperate to the best of its ability.  See US Magnesium's Resp. in Opp'n to Pl.'s Rule 56.2 Mot. for J. on the Agency R. ("US Magnesium's Br.") 17  26.  Although case law "does not require perfection, it does not condone inattentiveness, carelessness, or inadequate record keeping."  NSK Ltd. v. United States, 481 F.3d 1355, 1361 (Fed. Cir. 2007) (internal quotation marks omitted).  Moreover, under 19 C.F.R. § 351.303(g), "Commerce's regulations require a representative of the company participating in an administrative review or investigation to certify that he has read the attached submission, and that to the best of his knowledge, the information contained in the submission is complete and accurate."  PAM, S.p.A. v. United States, 495 F. Supp. 2d 1360, 1369 (CIT 2007).  Thus, TMI was responsible for providing complete and correct information,
                                                                                                          (continued...)

1275, 1277 ("The court cannot accept a construction of 19 U.S.C. § 1677e(b) under which the

party who suffers the effect of the adverse inference is not the party who failed to cooperate."). If

TMI is to receive an AFA rate, Commerce must link TMI to its supplier's failures, as a matter of

fact. Assuming arguendo there is any textual ambiguity in 19 U.S.C. § 1677e(b), Commerce's

statutory arguments do not satisfy its obligation to administer the statute fairly. Accordingly, the

court remands this matter to Commerce with instructions to either find that TMI failed to

cooperate to the best of its ability and assign it an AFA rate, or calculate a neutral facts available

rate for TMI.[7]

## II.      Due Process

TMI claims that Commerce violated its due process rights on three separate

occasions during this review. See Pl.'s Br. 3. Generally, "[w]here a right to be heard exists, due

process requires that right be accommodated at a meaningful time and in a meaningful manner."

Barnhart v. United States Treasury Dep't, 588 F. Supp. 1432, 1438 (CIT 1984). It remains

---

[6](...continued)
id., and, for this reason, an inadequate inquiry into the accuracy of facts submitted may trigger AFA, see Nippon, 337 F.3d at 1383; see also PAM, S.p.A., 582 F.3d at 1339 (providing that the inquiry must be "reasonable under the circumstances"). The inquiry extends to an examination of the accuracy of suppliers' data to the extent that it is readily available and not burdensome to obtain. See Pacific Giant, Inc. v. United States, 26 CIT 1331, 1332 33 (2002). Moreover, when verification is pending, a respondent must alert Commerce, prior to verification, to problems it discovered with data while preparing for verification. See id.; see also Wuhan Bee Healthy Co. v. United States, 31 CIT 1182, 1193 (2007). Commerce, however, has failed to make any determination as to whether TMI satisfied these obligations. See Final Results, 74 Fed. Reg. at 66,089; Issues and Decision Memorandum at 6; AFA Memorandum at 12 14.

[7] It is premature for the court to decide if the AFA rate of 111.73% assigned to TMI in the Final Results is corroborated. Of course, even AFA rates must be grounded in commercial reality. See F.Lii De Cecco Di Filippo Fara S. Martino S.p.A. v. United States, 216 F.3d 1027, 1034 (Fed. Cir. 2000).

unclear to what extent constitutional due process claims are "viable in an antidumping context." Borden, Inc. v. United States, 23 CIT 372, 375 n.3 (1999), rev'd on other grounds, 7 F. App'x 938, 938  39 (Fed. Cir. 2001); see Am. Ass'n of Exp. & Imp. v. United States, 751 F.2d 1239, 1250 (Fed. Cir. 1985) (providing that "[n]o one has a protectable interest to engage in international trade").  The court need not decide this issue because the contours of such rights in this context are grounded in the statutory scheme and reasonable administration thereof, and TMI's claims are unavailing thereunder.  See Mid Continent Nail Corp. v. United States, 712 F. Supp. 2d 1370, 1375 (CIT 2010).  The court will address the three claims separately.

A.     Commerce's Application of AFA in the Final Results

TMI first claims that Commerce's "failure to release information to TMI deprived TMI of the right to due process."  Pl.'s Br. 26.  TMI explains that it "was unaware of Commerce's decision to apply an adverse inference against TMI until the Final Results were issued" because Commerce failed to issue an amended preliminary results that applied AFA to TMI.  Id. at 27.  This claim lacks merit.

"The court applies a rule of reason in evaluating administrative due process claims."  Borden, 23 CIT at 375 n.3.  In this case, although Commerce did not apply AFA to TMI until the Final Results, see Final Results, 74 Fed. Reg. at 66,090, this issue was raised and extensively briefed by the parties during the review, see US Magnesium's App. Tab 25, 20  32, Tab 26, at 4  31, Tab 27, at 3  16.  Commerce considered these arguments before making its final decision regarding the application of AFA to TMI.  See Issues and Decision Memorandum at 2  5, 10, 13  14.  Furthermore, the Court of International Trade provides TMI a forum in which to

challenge its AFA rate, regardless of exhaustion, in the event that Commerce unexpectedly

changes its mind between the preliminary and final results.  See Qingdao Taifa Grp. Co. v.

United States, 637 F. Supp. 2d 1231, 1237 (CIT 2009) (explaining that a respondent "is not

required to predict that Commerce would accept other parties' arguments and change its

decision").  Commerce's failure to issue amended preliminary results, therefore, did not

substantially deprive TMI of an opportunity to be heard.  See Mid Continent Nail, 712 F. Supp.

2d at 1375 ("If, however, a plaintiff makes thoughtful comments that Commerce addresses in its

determination, then, as a practical matter, [the plaintiff] was not substantially deprived of an

opportunity to be heard before the agency." (Internal quotation marks omitted)).

### B.        Draft Liquidation Instructions

Next, TMI claims that Commerce's failure to issue draft liquidation instructions

violated its due process rights.  Pl.'s Br. 29.  TMI argues that "[e]specially where the decision of

the Preliminary Results changed, Commerce must provide a copy of the draft liquidation

instructions as part of the Final Results calculations [sic] materials for review and comment."  Id.

at 30.  This claim lacks merit.

In making a due process determination, courts often look for "evidence that given

more time [a plaintiff] would have, in fact, provided more meaningful comments."  Sichuan

Changhong Elec. Co. v. United States, 466 F. Supp. 2d 1323, 1328 (CIT 2006).  TMI, however,

does not allege any errors in Commerce's liquidation instructions from this review[8] and does not

---

[8] Rather, in support of its argument, TMI points to the previous review, in which
Commerce allegedly made a "significant error" in its liquidation instructions.  Pl.'s Br. 30.  TMI
argues that "[t]his required TMI to make an emergency application for a temporary restraining
                                                                                                                                    (continued...)

describe any arguments it would have made if Commerce had provided it with draft instructions.[9]

See Pl.'s Br. 29  31.  Commerce's failure to provide draft liquidation instructions in the Final

Results, therefore, did not violate TMI's due process rights.  See Mid Continent Nail, 712 F.

Supp. 2d at 1376 (holding that respondent's due process rights were not violated when "[t]here is

no evidence before the court . . .  to suggest that the plaintiffs would have provided more

meaningful comments if they were afforded" additional time to comment).

> **C.      Consideration of Facts Not on the Record**

Finally, TMI claims that it was deprived due process when Commerce considered

facts not on the administrative record.  Pl.'s Br. 31.  Specifically, TMI argues that it "requested

Commerce remove Petitioner's rebuttal brief dated November 17, 2009 from the record because

it contains argument based on facts not of record in this review," but Commerce failed to do so.

Id.  For the following reasons, TMI has failed to support such a claim.

Although TMI's argument is unclear and imprecise, it appears to be challenging

the introduction of new factual evidence after the established time limitation.  See Pl.'s Br.

31  32.  Indeed, pursuant to the regulations, "a submission of factual information is due no later

than . . . 140 days after the last day of the anniversary month."  19 C.F.R. § 351.301(b)(2).  TMI,

---

[8](...continued)
order" and that "such a waste of judicial resources could have been easily avoided."  Id.  Such
considerations, however, are irrelevant for the purposes of this due process claim.

[9] Commerce's policy is to issue liquidation instructions after the publication of the final
results of a review in the Federal Register.  See SKF, 675 F. Supp. 2d at 1280.  "[T]he issuance
of the liquidation instructions is an agency action that is separate from the Final Results," SKF
USA Inc. v. United States, 31 CIT 405, 409 (2007), and thus, under the statutory regime,
Commerce need not provide respondents with an opportunity to comment, see 19 U.S.C.
§ 1677m(g).  Rather, a plaintiff may challenge errors in Commerce's instructions to Customs
where the error was not reflected in the final results.  See Shinyei Corp. of Am. v. United States,
355 F.3d 1297, 1309 (Fed. Cir. 2004).

however, has repeatedly failed to identify what new facts it is referring to, despite ample

opportunity to do so.  See Pl.'s Br. 31  32; App. of Non-Confidential Docs. in Supp. of Def.'s

Mem. in Opp'n to Mot. for J. Upon the Agency R. Tab 14, at 2 (stating that "[i]t is not the place

of TMI to repeat spurious facts not of record when objecting since US Magnesium must know, or

can very easily identify, these facts").  Despite both the Government and US Magnesium having

raised this obvious problem with TMI's claim,[10] see Def.'s Br. 30; US Magnesium's Br. 37  38,

TMI yet again declined to identify any specific facts in its reply brief, see Reply Br. in Supp. of

the Mot. for J. on the Agency R. Submitted by Pl. Tianjin Magnesium International Co., Ltd.,

Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade 10  11.

    For the aforementioned reasons, TMI has not demonstrated that any due process rights it

had were violated.  Accordingly, TMI's motion for judgment on the agency record is denied as to

these claims.

---

[10] The Government and US Magnesium both speculate that the facts to which TMI refers
are references to information from a previous review.  See Def.'s Br. 30; US Magnesium's Br.
38.  Both parties argue that Commerce is permitted to take notice of such information.  See
Def.'s Br. 30; US Magnesium's Br. 38.  The court, however, need not decide this issue because
TMI has failed to identify this information.

**CONCLUSION**

For the aforementioned reasons, the court remands the matter for Commerce to make a finding as to whether plaintiff cooperated to the best of its ability in antidumping review. TMI's motion for judgment on the agency record is denied as to its due process claims.

Commerce shall file its remand determination with the court within sixty days of this date. TMI and US Magnesium have eleven days thereafter to file responses.


                                                  _____/s/ Jane A. Restani_____
                                                          Jane A. Restani
                                                               Judge


Dated: This 11th day of February, 2011.
           New York, New York.