Slip Op. 11-87

UNITED STATES COURT OF INTERNATIONAL TRADE

```
_____
                                 :
ATAR, S.r.L.,                    :
                                 :
             Plaintiff,          :
                                 :
         v.                      :  Before: Richard K. Eaton, Judge
                                 :
UNITED STATES,                   :  Court No. 08-00004
                                 :
             Defendant,          :
                                 :
     and                         :
                                 :
AMERICAN ITALIAN PASTA CO.,      :
et al.,                          :
                                 :
             Deft.-Ints.         :
_____:
```

OPINION

[Plaintiff's motion for judgment on the agency record is denied and the United States Department of Commerce's Final Results, as amended by the Final Remand Determination, are sustained.]

Dated: July 22, 2011

*Riggle & Craven* (*David J. Craven*), for plaintiff Atar, S.r.L.

*Tony West*, Assistant Attorney General; *Jeanne E. Davidson*, Director, *Reginald T. Blades, Jr.*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Jane C. Dempsey*); Office of Chief Counsel, United States Department of Commerce (*Mykhaylo Gryzlov*), of counsel, for defendant United States.

*Kelley Drye & Warren, LLP* (*Paul C. Rosenthal* and *David C. Smith*), for defendant-intervenors American Italian Pasta Company, Dakota Growers Pasta Company, and New World Pasta Company.

Eaton, Judge: Before the court is plaintiff's motion for

judgment on the agency record, challenging the United States

Department of Commerce's (the "Department" or "Commerce") final results of the tenth administrative review of the antidumping duty order on pasta from Italy, covering the period of review ("POR") July 1, 2005 through June 30, 2006, as amended by a voluntary remand. *See* Certain Pasta from Italy, 72 Fed. Reg. 70,298 (Dep't of Commerce Dec. 11, 2007) (notice of final results of the tenth administrative review and partial rescission of review) (the "Final Results") and the accompanying Issues and Decision Memorandum (Dep't of Commerce Dec. 4, 2007) ("Issues & Dec. Mem."); Final Remand Determination (Dep't of Commerce May 6, 2010) (the "Remand Results").  The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2006) and 19 U.S.C. § 1516a(a)(2)(B)(iii).  For the reasons set forth below, plaintiff Atar, S.r.L.'s ("Atar") motion for judgment on the agency record is denied, and the Final Results, as amended by the Remand Results, are sustained.

BACKGROUND

The principal issue before the court is plaintiff's status as a producer by tolling.  In a tolling arrangement, a producer employs a subcontractor that provides processing services for, or material for incorporation into, the merchandise that is sold by the producer.  *See United States v. Eurodif S. A.*, 129 S. Ct. 878, 885 (2009).  Here, the question is whether Atar had a

sufficient role in the manufacture and sale of the pasta for the company to be a producer for the purposes of the unfair trade laws. Atar's status as a producer is important because it is determinative of the antidumping duty rate assigned to the entries of pasta.

On January 15, 2009, Atar moved for judgment on the agency record pursuant to USCIT Rule 56.2, contending that in the Final Results, the Department wrongfully: (1) determined that Atar was not a producer by tolling; (2) rescinded the administrative review with respect to Atar; (3) issued instructions to liquidate entries resold by Atar at the "all others" rate; and (4) accepted American Italian Pasta's uncertified submission relating to Atar's questionnaire responses. Mot. For J. on the Agency Rec. Submitted Pursuant to R. 56.2 of the Rules of the USCIT ("Pl.'s Mot.") 2—4.

Defendant-intervenors American Italian Pasta Company, Dakota Growers Pasta Company, and New World Pasta Company ("defendant-intervenors") opposed the motion and fully supported the Final Results. Commerce, however, asked for a voluntary remand to reconsider its decision to rescind the administrative review and to reexamine its conclusions with respect to the rate at which the entries would be liquidated. The court granted the voluntary remand on November 10, 2009, and Commerce filed the Remand Results on May 6, 2010. *See Atar, S.r.L. v. United*

*States*, Court No. 08-00004, Order at 1 (Nov. 10, 2009) (granting "defendant's request for a full voluntary remand").

In the Remand Results, Commerce reversed its initial determination to rescind the review with respect to Atar, a reversal supported by both plaintiff and defendant-intervenors. The Department also reviewed the appropriate assessment rate for Atar's entries, and, based on its reseller policy,[1] decided to use the duty rates applicable to Atar's subcontractors, rather than applying the "all others" rate to the entries.

Following the Remand Results, Atar (1) continues to argue that the court should find it was properly a producer by tolling, and (2) renews its objection to American Italian Pasta's submission relating to Atar's questionnaire responses.  For their part, defendant-intervenors oppose the use of the reseller policy to set rates for the entries, contending that Commerce should have invoked its "facts available" authority and applied the "all others" rate to Atar's entries.

STANDARD OF REVIEW

The court must uphold a final determination by the Department in an antidumping proceeding unless it is "unsupported

---

[1]     Commerce relies on the reseller policy when producers, in this case Atar's subcontractors, have not made the final sale themselves, but are aware that their goods will eventually be sold in the United States. *See Parkdale Int'l, Ltd. v. United States*, 31 CIT 1229, 1231, 508 F. Supp. 2d 1338, 1343 (2007).

by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(1)(B)(i).

DISCUSSION

I.  Atar's Status As a Producer by Tolling

    A.    Atar Argues that Past Practice Requires Commerce to Continue to Find It Is a Producer by Tolling

As plaintiff sees it, its history of producing pasta is one that reflects its status as a producer by tolling, a status accepted by Commerce as valid in a previous new shipper review and an administrative review.  *See* Certain Pasta form Italy, 70 Fed. Reg. 30,083 (Dep't of Commerce May 25, 2005) (notice of final results of new shipper review of the antidumping duty order); Certain Pasta from Italy, 72 Fed. Reg. 7,011 (Dep't of Commerce Feb. 14, 2007) (notice of final results of the ninth administrative review of the antidumping duty order); *see also* Rep. of Pl. Atar, S.r.L. ("Pl.'s Rep.") 4—5 ("[B]y the time of THIS administrative review, Atar had been involved in the production of Pasta by means of tolling for more than a year. Atar had already been reviewed in a new shipper review and a regular administrative review.  The history of THIS administrative review is that it reflects the continued tolling of a company which had been previously [] tolling and [whose] tolling had been accepted by the United States as valid.").

In addition to pointing to its specific history of having

been found to be a producer by tolling, Atar points to the
Department's previous history in another pasta determination to
make its arguments.  Atar relies on what it characterizes as "the
specific tests as to what constitutes a producer by tolling"
found in the administrative decisions of Certain Pasta from
Italy, 63 Fed. Reg. 53,641 (Dep't of Commerce Oct. 6, 1998)
(preliminary results of new shipper antidumping duty
administrative review) and Certain Pasta from Italy, 64 Fed. Reg.
852 (Dep't of Commerce Jan. 6, 1999) (final results of new
shipper antidumping duty administrative review) (collectively,
"*Corex*").[2]  Pl.'s Rep. 10.  In doing so, the company contends
that the determination relied upon by Commerce, Polyvinyl Alcohol
from Taiwan, 63 Fed. Reg. 32,810 (Dep't of Commerce June 16,
1998) (final results of antidumping duty administrative review)
("*PVA*"), is not pertinent.  Pl.'s Rep. 10—11.

---

[2]     The Department argues that the court should disregard
Atar's reliance on *Corex* in this litigation because "Atar did not
raise any arguments regarding Commerce's examination of its
circumstances based upon [*PVA*] in its case brief during the
administrative proceeding."  Def.'s Con. Supp. Mem. in Opp. to
Pl.'s R. 56.2 Mot. for J. Upon the Agency Rec. and Resp. to
Def.-Ints.' Comm. Upon the Remand Redetermination 18.  The court,
however, agrees with Atar that its case brief "addressed the
issues raised by *PVA* in its discussion of *Corex*."  Pl.'s Rep. 12.
Although Atar may not have cited the *PVA* case below, it
nonetheless raised all its relevant arguments there, and
preserved them for use again here.

B.    Commerce Distinguishes Atar from Past Practice

The Department claims that its determination that Atar was not a producer by tolling flows from its "totality of the circumstances" approach that Commerce suggests the United States Supreme Court endorsed by its focus on the "economic reality" of tolling contracts in *United States v. Eurodif S. A.*, 129 S. Ct. 878, 887 (2009).  Def.'s Con. Supp. Mem. in Opp. to Pl.'s R. 56.2 Mot. for J. Upon the Agency Rec. and Resp. to Def.-Ints.' Comm. Upon the Remand Redetermination ("Def.'s Mem.") 9.  The agency explains that the approach allowed it to examine the actual effect of Atar's tolling agreements, and not just the legal formalities employed by the parties.  *See* Def.'s Mem. 9 ("Commerce's approach focuses upon the economic reality rather than the labels given within the tolling contracts.").

Specifically, Commerce considered: (1) the history of Atar's business relationships with the subcontractors; (2) the timing of Atar's decision to begin a toll production operation; (3) the close and continuing relationships between the U.S. importer and the pasta producers; (4) Atar's purchases of inputs from these producers; and (5) the claimed lack of meaningful value added to the production process by Atar, considering the overall arrangement through which the purchase and sale of pasta occurred.  Def.'s Mem. 10.

First, the Department sets out Atar's business history, and

the continuing business relationships of its subcontractors, to support its determination that Atar was not a producer of pasta. According to Commerce, Atar was originally founded as an electrical engineering firm, changed ownership multiple times, and is currently a trading company, selling pasta and various non-scope products. Def.'s Mem. 10—11. The company's tolling operation began shortly after some Italian pasta producers received high antidumping rates during the sixth administrative review of pasta from Italy for the POR July 1, 2001 through June 30, 2002. *See PAM, S.p.A. v. United States*, 582 F.3d 1336 (Fed. Cir. 2009) (affirming 45.49 percent adverse facts available rate).

In late 2003 or early 2004, an importer, adversely affected because its producers had received these high rates, approached Atar. Def.'s Mem. 12. As a result of the approach, the two companies entered into an agreement whereby the importer purchased the same brands of pasta from Atar that it had previously purchased from, what were now, Atar's subcontractors. Def.'s Mem. 12. Because Atar was a new shipper, the importer was able to secure the 11.26 percent "all others" cash deposit rate for its U.S. imports. Def.'s Mem. 12. This rate was lower than the rates the subcontractors would have received.

According to Commerce, little else changed as a result of the agreement. Thus, the same pasta factories manufactured the

same brands of pasta and shipped them directly to the same U.S. importer. Def.'s Mem. 12. The Department further asserts that Atar took on little responsibility in this new arrangement. That is, it did not maintain a sales force in Italy or the United States, engage in marketing or advertising efforts, pay sales calls to customers, or provide any product support or product development services in any of its markets. Def.'s Mem. 14—15. Indeed, according to Commerce, Atar did not know which customers owned the various brands of pasta it purportedly produced, nor did it play any role in price negotiations or sales beyond issuing invoices and receiving payments. *See* Issues & Dec. Mem. at 7. Atar does not meaningfully quarrel with these findings.

Next, the Department claims that Atar did not add any significant value to the production process. As to the pasta ingredients, Commerce cites to record evidence it claims establishes that, in many instances, the subcontractors used ingredients from their inventories to produce the pasta. Def.'s Mem. 13. In this regard, the Department cites to Atar's questionnaire response that "the toll producer would be responsible for the shortage" if it did not receive all of the semolina Atar had ordered for it to process. Def.'s Mem. 20 (quoting Antidumping Supplement Questionnaire Sections A and D Response of Atar S.r.L. (Apr. 12, 2007) ("Apr. 12, 2007 Resp.") 5). For Commerce, this indicates that "whatever value Atar

purportedly contributed to the production process by purchasing semolina was not reflected in the total price Atar paid for pasta." Def.'s Mem. 14. In other words, Atar's purchase of semolina, or failure to purchase, did not affect the price it paid its subcontractors for the pasta. In addition, although Atar apparently purchased the bulk of the semolina, it purchased it from the subcontractors themselves and their suppliers, and "failed to demonstrate that it maintained control over this input." Def.'s Mem. 13. According to the Department, this is demonstrated by Atar's inability to match up the amount of claimed semolina purchases with the amount of finished product. Def.'s Mem. 21 (citing Antidumping 2nd Supplemental Questionnaire Sections D Response of Atar S.r.L. (May 25, 2007) Exhibit SSD-3) ("Ex. SSD-3"). Atar disputes these findings, insisting that record evidence supports its claim to having purchased the pasta inputs. Pl.'s Rep. 10.

Finally, the Department claims that no evidence exists on the record that Atar conducted independent product testing, independently made arrangements for warehousing, performed quality control, received deliveries of inputs for the finished pasta, oversaw the state of the products, or prepared the pasta at any phase for delivery to the customers. Issues & Dec. Mem. at 7. Atar does not challenge some of these conclusions as a matter of fact, but rather questions the relevance of any of

these activities to its status as a producer by tolling. *See* Pl.'s Mot 29 ("[S]uch analysis does not include an evaluation as to what a producer by tolling would do.").

Taken altogether, then, Commerce concludes the "totality of the circumstances" indicates that Atar had no significant role in the production or selling of the pasta entries. *See* Issues & Dec. Mem. at 7 ("Based upon our analysis of the totality of circumstances, we continue to find that Atar is not properly treated as a toll producer.").

Looking at its previous tolling determinations, the Department believes Atar's circumstances are most like those of the respondent Perry Chemical Corporation ("Perry") in *PVA*. 63 Fed. Reg. at 32,811. Perry was a U.S. importer and reseller of polyvinyl alcohol and, like Atar, entered into a production arrangement after a producer was found to be dumping and assigned a high antidumping margin. Def.'s Mem. 16. Prior to the imposition of this high dumping margin, Perry was not in the business of producing or manufacturing any chemical. Def.'s Mem. 16. After entering into, what it characterized as, a tolling agreement, Perry purchased the major production input through its purported subcontractor's affiliate, and the subcontractor retained possession and control of this input. Def.'s Mem. 16.

According to Commerce, the primary benefit of the tolling arrangements in *PVA* and this case is identical: it "allowed

importers to purchase the same products made from the same factories without having to pay the cash deposits applicable to the producers." Def.'s Mem. 17. Based on these facts, Commerce concluded that Perry was not a producer by tolling. *See PVA*, 63 Fed. Reg. at 32,813 ("We find the mere rearrangement of Perry's contractual relationship with [its subcontractor] insufficient to establish Perry as a producer . . . ."). Thus, the Department maintains that, here, it has acted in a manner consistent with its previous methodology for determining the validity of tolling arrangements, and insists that Atar is being treated in a manner consistent with its previous determinations.

The Department further argues that plaintiff's heavy reliance on the grant of toll producer status in *Corex* to be mistaken. The *Corex* administrative review involved another Italian pasta exporter that the Department ultimately found to be a producer by tolling, based on evidence that it purchased all of the pasta inputs, paid the subcontractor a processing fee, maintained ownership at all times of the inputs as well as the final product, conducted product testing, and marketed the pasta. *Corex*, 63 Fed. Reg. at 53,642. The Department claims that Atar does not meet all of the material factors set forth in *Corex*. Def.'s Mem. 19—20. In particular, Commerce stresses that, unlike the *Corex* producer, Atar: (1) did not purchase all the pasta ingredients; (2) did not maintain the ownership of inputs from

purchase to the sale of the subject merchandise; and (3) conceded that it failed to conduct independent product testing and marketing research.  Def.'s Mem. 20—21.

Finally, the Department maintains that its previous determinations finding that Atar was a producer by tolling provide no support for the company's contention that it is a producer.  First, as to the new shipper review, "Atar was the only participating party and its tolling arrangement was not challenged."  Def.'s Mem. 17.  With respect to the one previous administrative review in which Atar was a participant (the ninth), Commerce insists, that there, it was unable to rule on the tolling arrangements because the record contained insufficient evidence.  Def.'s Mem. 17—18 (citing Issues and Decisions for the Final Results of the Ninth Administrative Review of the Antidumping Duty Order on Certain Pasta from Italy and Determination to Revoke in Part (Dep't of Commerce Feb. 5, 2007) ("Ninth Review Issues & Dec. Mem.") at Comm. 1 ("[T]he Department has serious concerns with respect to the overall nature of Atar's operation and its claim to be a producer of pasta under the tolling regulation.  While in the new shipper review of Atar and in this current administrative review the Department has accepted Atar's claim to be the producer of subject merchandise and foreign like product under the tolling regulation, after having reviewed the record of this case and

Department precedent cited below, we are concerned with respect to this conclusion.")).

C.    Substantial Evidence Supports Commerce's Determination that Atar is Not a Producer by Tolling

At the heart of plaintiff's challenge to Commerce's determination is, what it sees as, inconsistent treatment by the Department of (1) the same facts that were before it in prior reviews of Atar, and (2) the same facts in determinations relating to other companies.  As the Federal Circuit recently reiterated, "an agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently."  *Dongbu Steel Co., Ltd. v. United States*, 635 F.3d 1363, 1371 (Fed. Cir. 2011) (citation omitted).  The court, however, is not convinced that Commerce has acted arbitrarily here.

It is well-established that "[w]hen an agency changes its practice, it is obligated to provide an adequate explanation for the change."  *SKF USA Inc. v. United States*, 630 F.3d 1365, 1373 (Fed. Cir. 2011) (citing *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983)).  As long as an adequate explanation is provided, "Commerce is entitled to change its views," even if it is "changing [a] longstanding policy only in the present case." *Saha Thai Steel Pipe (Pub.) Co. Ltd. v. United States*, 635 F.3d

1335, 1342, 1341 (Fed. Cir. 2011).

Here, Commerce has reached a different conclusion as to Atar's producer status from the new shipper review and previous administrative review. The Department, however, explains that in the new shipper review "Atar was the only participating party and its tolling arrangement was not challenged," meaning "Commerce had no reason to question Atar's tolling arrangement upon the basis of the record." Def.'s Mem. 17. Put another way, a challenge to Atar's producer status was not before it when Commerce made its new shipper determination, and so the Department did not question Atar's assertion of that status.

As to the previous administrative review, Commerce states that it "was unable to rule upon petitioners' challenge to Atar's toll producer status because the record contained insufficient evidence regarding this issue." Def.'s Mem. 17. Nonetheless, despite lacking "sufficient information to conduct a full analysis of Atar's tolling operation" in that review, Commerce stated that it "intend[ed] to fully pursue this issue and analysis in the subsequent, ongoing review . . . ." Ninth Review Issues & Dec. Mem. at Comm. 1. In other words, the Department concluded that it had insufficient information to reverse its position in the ninth review, but stated that it intended to make a record sufficient to make a determination in the next succeeding review, which it has now done.

Thus, in both the new shipper review and the ninth administrative review, it is apparent that Commerce did not make a determination based on all the facts concerning the various questions that were presented relating to Atar's status as a producer by tolling.  Commerce now has made its determination based on a fully-developed record.  That being the case, the court holds that Commerce has provided sufficient reasons for making its new finding, and that the company cannot rely on these previous reviews to preclude a change in Commerce's determination.  *See Nakornthai Strip Mill Pub. Co. Ltd. v. United States*, 32 CIT __, __, 587 F. Supp. 2d 1303, 1308 (2008) (finding Commerce had "adequately distinguished and reasonably explained its departure" from previous case when agency "demonstrated several key distinguishing facts between the two cases").

Moreover, Commerce has marshalled sufficient evidence from Atar's questionnaire responses to distinguish it from the producer by tolling in *Corex.*  In the original Federal Register notice for *Corex*, Commerce noted that the company "purchase[d] all of the inputs," "maintain[ed] ownership at all times of the inputs as well as the final product," and "conduct[ed] independent product testing and marketing research," facts that led Commerce to determine that Corex was the producer of the tolled merchandise.  *Corex*, 63 Fed. Reg. at 53,642; *see also Corex*, 64 Fed. Reg. at 852 (stating that the "final results do

not differ from the preliminary results").

Accordingly, Commerce did not confront the same factual situation in *Corex* as in this case. "[U]nlike *Corex*, Atar did not maintain ownership of the inputs from the time of purchase to the time of sale to United States customers. Specifically, Atar was unable to connect the purchase of inputs to the corresponding sale of the finished product." Def.'s Mem. 20—21; *see, e.g.*, Ex. SSD-3 (illustrating that Atar's ordered and delivered quantities of semolina failed to correspond to the ordered and delivered quantities of pasta). "Additionally, Atar conceded that the pasta factories commingled the semolina purchased by Atar with their own semolina." Def.'s Mem. 21 (citing Pl.'s Mot. 21). While Atar disputes some of this evidence, an examination of the record does not support the conclusion that Atar maintained ownership of the semolina at all times. *See, e.g.*, Response of Atar S.r.L. to Section D Antidumping Questionnaire (Nov. 13, 2006) 3 (describing that raw material inputs are "shipped by the vendors directly to the processors' facilities and maintained by the processors in inventory" before "the pasta is shipped directly from the unaffiliated processor to Atar's customers").

In addition, Atar noted in its April 12, 2007 response that "the toll producer would be responsible for [a] shortage" if it did not receive all of the semolina Atar had ordered for it to process. Apr. 12, 2007 Resp. 5. This response indicates that

Atar had not and did not necessarily intend to purchase all of the semolina its subcontractors used to make the pasta.  The agreements show that "the factories bore the risk of the short fall or loss of raw materials and the finished product."  Def.'s Mem. 20 (citing Apr. 12, 2007 Resp. 4-5 (noting that the factory was responsible for shortfalls in the inputs).

Finally, Atar conceded that it did not conduct product testing or marketing research, stating instead that such activities are "wholly unnecessary" because "pasta is a mature product."  Pl.'s Mot. 27.  As the Department notes, though, the producer in *Corex* was selling the same product, and its product testing and marketing research were significant to Commerce's determination.  Def.'s Mem. 21—22.  Thus, Commerce concluded that one of the factors that was important to its finding that Corex was a producer by tolling was missing here.

Commerce, however, did support with substantial evidence its finding that the facts in Atar's arrangements were strikingly similar to those addressed in *PVA*.  "[S]imilar to the respondent in *PVA*, Atar, Atar's subcontractors, and their customers merely restructured their relationship to avoid payment of antidumping duties."  Issues & Dec. Mem. at 8.  Atar, like Perry, entered a new market after Commerce assigned producers high antidumping duty rates.  Additionally, Atar purchased its major production input through its subcontractors' previous vendors, and the

subcontractors maintained control over the input.  Putting these factors together, then, it was reasonable for Commerce to conclude that "Atar is more similar to the respondent in *PVA* where the Department determined that the respondent was not a toll manufacturer, rather than to the respondent in *Corex*." Issues & Dec. Mem. at 9.

Indeed, in addition to the differences between this case and *Corex* and the similarities to *PVA*, Commerce had a variety of evidence to support its conclusion that Atar was not a producer by tolling.  For instance, (1) Atar's decision to enter into the pasta market directly after Commerce imposed a high antidumping duty rate on its subcontractors, a move that brought a much lower cash deposit rate for the entries as a result of Atar's new shipper status, (2) the company's relationship with the subcontractors and its purchase of inputs from them, (3) its failure to contribute any meaningful value to the production process because it did not purchase or control all the inputs, (4) its ignorance as to which customers owned the various brands of pasta produced by the subcontractors, and (5) Atar's lack of any sales, price negotiating, marketing, or product development efforts on behalf of its new venture.  Moreover, the continuing relationships between the subcontractors and the U.S. importer, before and after tolling allegedly began, indicate the true nature of the business arrangements, i.e., the same factories

produced the same brands of pasta and shipped them directly to the same importer.

As noted, Commerce believes that these facts make up a totality of the circumstances that lead to the conclusion that Atar was not a producer by tolling. The court agrees that, taken as a whole, Commerce has supplied the substantial evidence necessary to sustain its determination that Atar was not a producer by tolling. Notably, the Department adequately explained its departure from its conclusions in earlier reviews, demonstrated that it had acted in a manner consistent with its reviews of other claimed producers by tolling, and highlighted evidence indicating Atar's attenuated connection with the production and sales of the entries.

II.  Applicable Duty Rates

> A.  Defendant-Intervenors Insist Circumstances Demand Use of Commerce's "Facts Available" Authority

While Atar takes issue with Commerce's tolling findings, defendant-intervenors challenge Commerce's application of its reseller policy to Atar's subcontractors to determine the various applicable duty rates for Atar's entries. Based on this policy, Commerce applied to Atar's entries previously calculated rates for the subcontractors that produced the pasta. *See* Remand Results at 13 ("In light of our findings during the proceeding that entities other than Atar were producers of the subject pasta

and had knowledge that pasta was destined for the United States, our task is to determine an appropriate rate for these entries.").

Defendant-intervenors describe this change as affording Atar "the opportunity to significantly lower its dumping liability, by providing information it withheld during the original administrative proceeding."  Deft.-Ints.' Comm. In Opp. to Portions of Commerce's May 5, 2010 Final Remand Det. ("Deft.-Ints.' Comm.") 3.  Thus, defendant-intervenors insist that Atar was given an unlawful opportunity to put information on the record relating to the subcontractors' rates.  According to defendant-intervenors, Atar withheld this information while it pursued the "charade" that it was a manufacturer under a tolling operation it had arranged with the actual producers. Deft.-Ints.' Comm. 4.  Therefore, they ask the court to reject the Remand Results insofar as they apply producer-specific cash deposit rates to some of Atar's entries, and direct Commerce to continue to apply the "all others" rate to all of Atar's entries. Deft.-Ints.' Comm. 4.

In making their argument, defendant-intervenors rely on Commerce's "facts available" authority,[3] arguing that it was

---

[3]    *See* 19 U.S.C. § 1677e(a) ("If . . . necessary information is not available on the record, . . . the administering authority . . . shall . . . use the facts otherwise available in reaching the applicable determination under this subtitle.").

"designed specifically to allow the agency to address situations such as the one at bar." Deft.-Ints.' Comm. 6. According to defendant-intervenors, in administering its reseller policy, Commerce typically "would have sent its questionnaires to the actual producers." Deft.-Ints.' Comm. 4. Here, however, the questionnaires were sent to Atar, not the subcontractors, so the record contained no information as to the production costs and sales prices of the actual manufacturers, information necessary for the reseller policy to be used. Saying the statute directs Commerce to use "facts available" when needed information is not available, defendant-intervenors insist that Commerce should have "filled the gaps" resulting from the missing information by using facts otherwise available on the original record. Deft.-Ints.' Comm. 5. For defendant-intervenors, by allowing Atar to first make its claim that it was a producer by tolling, and only having failed to make this case, then allowing it to provide information relating to its subcontractors, the Department gave the company a second chance at a lower rate.

Ultimately, defendant-intervenors see the findings resulting from the Remand Results as serving to "undermine all applicable statutory and regulatory deadlines by permitting Atar the opportunity to submit actual producer information on an entry-by-entry basis, when the company claimed such information was not available—and more importantly failed to provide

it—during the course of the administrative review." Deft.-Ints.'
Comm. 7—8. For defendant-intervenors, Atar's behavior places the
company squarely within the facts available provisions of the
statute. *See* Deft.-Ints.' Comm. 6 ("[T]he agency strives to wrap
its [invocation of the reseller policy] in the cloak of accuracy,
while assiduously avoiding invocation of its statutory "facts
available" authority, which was designed specifically to allow
the agency to address situations such as the one at bar (where
necessary information is missing from the record).").

B.  Commerce Relies on Reseller Policy

The Department argues that its modification on remand to
producer-specific duty rates is supported by substantial evidence
and in accordance with law. Def.'s Mem. 23. Commerce states
that, under its reseller policy, if a producer is aware of the
destination of a sale by a reseller, the Department will find
that the producer set the price of sale into the United States
and will assess the antidumping duty based on that producer's
rate. *See Parkdale Int'l, Ltd. v. United States*, 31 CIT 1229,
1231, 508 F. Supp. 2d 1338, 1343 (2007) ("By identifying the
party that had knowledge of the destination of the subject
merchandise, Commerce determines which entity was the 'price
discriminator' that engaged in the dumping, and hence which
company's dumping margin should apply to a given entry.")

(citation omitted).  In other words, on remand Commerce looked behind Atar's claims that it was a producer by tolling, found them wanting, and then, using its reseller policy, applied rates previously calculated for the subcontractors Atar hired.

Commerce argues that it decided to apply producer-specific rates to the pasta entries because the subcontractors were the real producers of the pasta and had knowledge that the goods were destined for the United States.  Def.'s Mem. 23.  Responding to defendant-intervenors' insistence that Commerce should have assessed duties upon the pasta entries at the "all others" rate as "facts available," the Department answers that there was no factual gap in the record to fill.  Commerce claims that it obtained all necessary information on remand to assess producer-specific duty rates.  Def.'s Mem. 24—25.  The Department further states that it has "broad discretion to determine the extent of investigation and the information it needs."  Def.'s Mem. 25 (citing *Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1394—95 (Fed. Cir. 1997); *PPG Indus., Inc. v. United States*, 978 F.2d 1232, 1238 (Fed. Cir. 1992)).

    C.    Commerce Did Not Err in Declining to Invoke Its "Facts Available" Authority

The relevant section of the antidumping duty statute, 19 U.S.C. § 1677e, governs Commerce's decision to use facts otherwise available.  Importantly, "[t]he use of facts otherwise

available . . . is only appropriate to fill gaps when Commerce must rely on other sources of information to complete the factual record." *Zhejiang Dunan Hetian Metal Co., Ltd. v. United States*, No. 2010-1367, slip op. at 26 (Fed. Cir. June 22, 2011).

Defendant-intervenors insist that the use of facts available is warranted here because the "necessary information" to use the Department's reseller policy "is missing from the record." Deft.-Ints.' Comm. 5.  In other words, they assert that Commerce exceeded its discretion by obtaining additional information during a voluntary remand, instead of using the existing record. In *PPG Industries, Inc. v. United States*, 978 F.2d 1232 (Fed. Cir. 1992) ("*PPG*"), however, the Federal Circuit held that Commerce has the "discretionary authority to determine the extent of investigation and information it needs."  *PPG*, 978 F.2d at 1238; *see also id.* at 1239 ("[F]or this court to reverse and remand for further investigation, PPG would have to show that the ITA abused its discretion in not conducting further investigation.").

The court finds that Commerce did not err in declining to invoke its "facts available" authority.  Having found that Atar was not a producer by tolling, the Department was confronted with the question of what rate to apply to the entries.  Commerce examined this question in the context of a full voluntary remand during which it was within its authority to put new evidence on

the record.  *See Union Camp Corp. v. United States*, 23 CIT 264,
282, 53 F. Supp. 2d 1310, 1327 (1999) ("[I]t is Commerce, and not
this Court, which is in the best position to initially decide
whether it should consider new evidence [on remand]").  In
addition, the Department's duty on remand continued to be to set
the most accurate rate for the entries.  *See U.S. Steel Corp. v.
United States*, 34 CIT __, __, Slip Op. 10-104 at 8 n.9 (Sept. 13,
2010) (not reported in the Federal Supplement) ("The Court
generally affords the Department reasonable discretion to
establish the breadth of its review of a particular issue on
remand so that the agency may reach the most accurate results.")
(citation omitted), *aff'd*, No. 2011-1074, 2011 WL 2648708 (Fed.
Cir. July 7, 2011).

Defendant-intervenors cite no authority for this Court to
prevent Commerce from seeking new information on remand or from
using this new information to close any gaps in the record.

As to the record evidence itself, the court finds that
Commerce has offered the substantial evidence needed to justify
the Department's reliance on producer-specific rates via its
reseller policy.  *See* Remand Results at 7 ("[A]t our request,
Atar provided information to link specific producers to specific
pasta products and explained how this information could be tied
to specific entries.").  Thus, Commerce was able to determine
which company produced which pasta and who it was sold to.  Since

these producers were aware that their product would be sold in the United States and had participated in earlier reviews under the order, Commerce was able to apply more accurate, company-specific rates to their entries.

As the Department notes, this meant avoiding liquidating "at the incorrect rate, . . . rather than at the rates applicable to the producers that produced the pasta and knowingly shipped it to the United States." Remand Results at 6—7. Because, on remand, Commerce closed any gaps in needed information and because it further considered information to assign more accurate rates for the entries, the court rejects defendant-intervenors' request that Commerce use facts available and apply, on remand, the "all others" rate to Atar's entries.

III. Uncertified Submission

In the initial administrative review, the Department accepted for placement on the record a twenty page letter submitted on July 9, 2007 by defendant-intervenor American Italian Pasta. Atar cites 19 C.F.R. § 351.303(g) (2010), which requires a party to file "with each submission containing factual information the [proper] certification," to challenge the Department's acceptance of the letter. Plaintiff insists that placement of factual information on the record without certification, and over the objection of the other party, cannot

be allowed, and is more than simply a procedural defect.  Pl.'s Mot. 39.

For its part, Commerce states that it did not rely on the submission and therefore, the issue is moot.  Def.'s Mem. 26—27.

This Court faced an identical question in *GSA, S.r.L. v. United States*, 23 CIT 920, 77 F. Supp. 2d 1349 (1999) ("*GSA*"). Relying on *Intercargo Insurance Co. v. United States*, 83 F.3d 391 (Fed. Cir. 1996), the *GSA* Court analyzed the uncertified submissions under the "harmless error" rubric applicable to agency proceedings.  *See Sea-Land Service, Inc. v. United States*, 14 CIT 253, 257, 735 F. Supp. 1059, 1063 (1990) ("[C]ourts will not set aside agency action for procedural errors unless the errors 'were prejudicial to the party seeking to have the action declared invalid.'") (citation omitted), *aff'd*, 923 F.2d 838 (Fed. Cir. 1991).  As "none of the facts submitted by the domestic producers were considered by Commerce in drawing its conclusions" and the plaintiff "failed to allege that such information was actually used in Commerce's decision or even that [it] was somehow prejudiced," the *GSA* Court concluded that "Commerce's error was harmless."  *GSA*, 23 CIT at 930, 77 F. Supp. 2d at 1357.

With *GSA* in mind, the court holds that this case's facts compel the same result.  Like the plaintiff in *GSA*, Atar does not allege that Commerce used the information in this submission or

that it was prejudiced.  Moreover, Commerce denies that it used information from the submission in its final analysis. Therefore, the court finds that any procedural error on Commerce's part in accepting the submission was harmless, and does not require the relief requested by plaintiff.

CONCLUSION

Based on the foregoing, the court sustains Commerce's Final Results, as amended by the Remand Results.  Therefore, plaintiff's motion is denied.  Judgment shall be entered accordingly.

                                        /s/ Richard K. Eaton
                                         Richard K. Eaton

Dated:     July 22, 2011
           New York, New York